**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ARIEL OLIVER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NOOM, INC.,<br><br>Defendant. | Case No. 2:22-cv-01857-WSS<br><br>Judge William S. Stickman IV<br><br>*Electronically Filed* |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NOOM, INC.'S MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

III. LEGAL STANDARD .......... 5

IV. THE COURT LACKS PERSONAL JURISDICTION OVER NOOM .......... 5

A. Plaintiff Fails to Plead Purposeful Availment .......... 6

B. Plaintiff Fails to Plead That Her Claims Arise Out of or Relate to Noom's Activities in Pennsylvania .......... 7

V. THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(B)(6) .......... 10

A. Plaintiff Fails to State a Claim under the WESCA .......... 10

1. Plaintiff Does Not Plead Interception .......... 10

a. Plaintiff Fails to Allege the Use of Any Device .......... 10

b. Plaintiff Fails to Allege that Noom Acquired the Contents of Her Website Communications .......... 13

2. Plaintiff Consented to the Alleged Data Collection .......... 15

B. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion. .......... 18

1. Plaintiff Does Not Plead an Intentional Intrusion .......... 18

2. Plaintiff Fails to Allege A Reasonable Expectation of Privacy Over Her Actions on Noom's Website .......... 19

3. The Alleged Conduct is not Highly Offensive to the Reasonable Person .......... 20

VI. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackourey v. Sonellas Custom Tailors*,
573 F. App'x 208 (3d Cir. 2014) ....6

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) ....10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....5

*Calder v. Jones*,
465 U.S. 783 (1984) ....7, 8, 9, 10

*Cardoso v. Whirlpool Corp.*,
2021 WL 2820822 (S.D. Fla. July 6, 2021) ....1, 13

*Chavez v. Dole Food Co., Inc.*,
836 F.3d 205 (3d Cir. 2016) ....5

*Chicarella v. Passant*,
343 Pa. Super. 330 (1985) ....20, 21

*Commonwealth v. Byrd*,
661 Pa. 85 (2020) ....16, 17, 18

*Commonwealth v. Diego*,
119 A.3d 370 (Pa. Super. Ct. 2015) ....12, 17

*Commonwealth v. Hart*,
611 Pa. 531 (2011) ....11

*Commonwealth v. Kelley*,
569 Pa. 179 (2002) ....11

*Commonwealth v. Proetto*,
771 A.2d 823 (Pa. Super. Ct. 2001), *aff'd,* 575 Pa. 511 (2003) ....17

*Commonwealth v. Smith*,
136 A.3d 170 (Pa. Super Ct. 2016) ....12

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Connor v. Whirlpool Corp.*,
2021 WL 3076477 (S.D. Fla. July 6, 2021)....................13

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................5

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
948 F.3d 124 (3d Cir. 2020)....................5, 6, 7

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
566 F.3d 94 (3d Cir. 2009)....................7

*Fidrych v. Marriott Int'l, Inc.*,
952 F.3d 124 (4th Cir. 2020)....................8

*Fraser v. Nationwide Mut. Ins. Co.*,
352 F.3d 107 (3d Cir. 2003), *as amended* (Jan. 20, 2004)....................12, 14

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021)....................1, 15, 19

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................14, 16

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)....................1, 2, 19

*Hadnagy v. Moss*,
2023 WL 114689 (E.D. Pa. Jan. 5, 2023)....................7, 8, 9

*Hartford Steam Boiler Inspection v. Int'l Glass Prods., LLC*,
2016 WL 5468111 (W.D. Pa. Sept. 29, 2016)....................12

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
2007 WL 4394447 (E.D. Pa. Dec. 13, 2007)....................13

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998)....................8, 9

*James v. City of Wilkes-Barre*,
700 F.3d 675....................13

*James v. Glob. TelLink Corp*,
852 F.3d 262 (3d Cir. 2017)....................18, 19

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ....................1

*Kline v. Sec. Guards, Inc.*,
386 F.3d 246 (3d Cir. 2004)....................18, 19

*Kuan Chen v. U.S. Sports Acad.*,
956 F.3d 45 (1st Cir. 2020)....................6

*Kyko Glob., Inc. v. Bhongir*,
807 F. App'x 148 (3d Cir. 2020) ....................7

*LaSala v. Marfin Popular Bank Pub. Co.*,
410 F. App'x 474 (3d Cir. 2011) ....................9

*Licea v. Caraway Home Inc.*,
No. EDCV 22-cv-01791 ....................9

*Low v. LinkedIn Corp.*,
900 F.Supp.2d 1010 (N.D. Cal. 2012) ....................19

*M.H. v. Omegle.com*,
2021 WL 1050234 (D.N.J. Mar. 19, 2021)....................6, 7

*Marten v. Godwin*,
499 F.3d 290 (3d Cir. 2007)....................10

*Maser v. Deeble*,
2017 WL 930795 (W.D. Pa. Mar. 9, 2017) ....................7

*Massie v. Gen. Motors Co.*,
2021 WL 2142728 (E.D. Cal. May 26, 2021) ....................9

*Media3 Techs., LLC v. CableSouth Media III, LLC*,
17 F. Supp. 3d 107 (D. Mass. 2014) ....................9

*Metcalfe v. Renaissance Marine, Inc.*,
566 F.3d 324 (3d Cir. 2009)....................5

*Motus, LLC v. CarData Consultants Inc.*,
520 F. Supp. 3d 87 (D. Mass. 2021) ....................8

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d (3d Cir. 2016)....................17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*O'Donnell v. United States*,
891 F.2d 1079 (3d Cir. 1989)....18

*Oliver v. Carnival Corp.*,
No. 2:22-cv-01855 (W.D. Pa. Dec. 22, 2022)....1

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022)....16, 17, 20, 21

*Potter v. Havlicek*,
2008 WL 2556723 (S.D. Ohio June 23, 2008)....13

*Remick v. Manfredy*,
238 F.3d 248 (3d Cir. 2001)....9

*Sacco v. Mouseflow, Inc.*,
2022 WL 4663361 (E.D. Cal. Sept. 30, 2022)....7

*Schnur v. JetBlue Airways Corp.*,
No. 2:22-cv-01621 (W.D. Pa. Nov. 16, 2022)....1

*Smidga v. Spirit Airlines, Inc.*,
No. 2:22-cv-01578 (W.D. Pa. Nov. 7, 2022)....1

*Smith v. Maryland*,
442 U.S. 735 (1979)....20

*Swiggum v. Ean Servs., LLC*,
2021 WL 3022735 (M.D. Fla. July 16, 2021)....1

*Toys "R" Us, Inc. v. Step Two*,
318 F.3d 446 (3d Cir. 2003)....6

*United States v. Ackies*,
918 F.3d 190 (1st Cir. 2019)....13

*United States v. Bowers*,
2021 WL 2882438 (W.D. Pa. July 8, 2021)....20, 21

*United States v. Reed*,
575 F.3d 900 (9th Cir. 2009)....14

*Voltaix, LLC v. NanoVoltaix, Inc.*,
2009 WL 3230887 (D.N.J. Oct. 1, 2009)....8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ....1, 19

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....15

*Yunker v. Pandora Media, Inc.*,
2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ....19

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
952 F. Supp. 1119 (W.D. Pa. 1997) ....6

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....14

**Statutes**

18 Pa. Cons. Stat.
§ 5702 ....10, 11, 12, 14
§ 5703 ....10
§ 5704(4) ....10, 16
§ 5725(a) ....10

42 Pa. Cons. Stat. § 5322(b) ....5

18 U.S.C. § 2510 ....12, 14

Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523 ....12

Federal Stored Communications Act ....13

Federal Wiretap Act ....12, 13, 14

Pennsylvania's Wiretapping and Electronic Surveillance Control Act ....1

WESCA .... *passim*

**Other Authorities**

American Heritage Dictionary of the English Language ....11

Black's Law Dictionary (11th ed. 2019) ....11

*Device*, https://www.ahdictionary.com/word/search.html?q=Device (last visited
Feb. 16, 2023) ....11

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

OneZero (Feb. 4, 2020), https://onezero.medium.com/almost-every-website-you-visit-records-exactly-how-your-mouse-moves-4134cb1cc7a0;....................2

Restatement (Second) of Torts § 652B (1977) ....................18

Fed. R. Civ. P.
Rule 12(b)(2)....................5
Rule 12(b)(6)....................5, 10

## I. INTRODUCTION

This case is part of a coordinated campaign by plaintiff's counsel to use a criminal statute to impose staggering civil liability on the routine collection of website usage information that companies use to improve their websites' function and user experience. The plaintiff's bar has recently flooded the Pennsylvania courts with such claims, filing no fewer than twenty-nine similar lawsuits in the past eight months seeking statutory damages based on the flawed theory that various consumer websites, like Noom, violated Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA") by using "session replay" software to analyze data a visitor *voluntarily* sends to the website when browsing that website. [1,2]

Plaintiff's counsel in this action has led this campaign by filing more than thirteen nearly identical complaints challenging session replay technology. Plaintiff alleges that upon her visit to the Noom website, Noom embedded code from a third-party vendor, FullStory, to collect the data related to her interactions with the Noom website and transmit that data to FullStory without her consent. But, as with the other numerous copycat lawsuits challenging session replay software, the Complaint contains ***no relevant details*** about Plaintiff Oliver's actual interactions with Noom's website and what data of hers, if any, was transmitted.

Instead, the vast majority of the Complaint focuses on villainizing any and all session replay technology. For instance, Plaintiff quotes from various third-party articles to suggest a

---

[1] *See, e.g.*, *Oliver v. Carnival Corp.*, No. 2:22-cv-01855 (W.D. Pa. Dec. 22, 2022); *Schnur v. JetBlue Airways Corp.*, No. 2:22-cv-01621 (W.D. Pa. Nov. 16, 2022); *Smidga v. Spirit Airlines, Inc.*, No. 2:22-cv-01578 (W.D. Pa. Nov. 7, 2022).

[2] Pennsylvania is only the latest jurisdiction to confront these copycat actions. Courts have rejected similar claims in Florida and California, including another case against Noom. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021) (dismissing with prejudice session replay claims brought under California wiretap law); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *1, *3 (N.D. Cal. Apr. 15, 2021); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *1, *2-3 (N.D. Cal. Apr. 8, 2021); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1322 (S.D. Fla. 2021); *Swiggum v. Ean Servs., LLC*, 2021 WL 3022735, at *1-2 (M.D. Fla. July 16, 2021); *Cardoso v. Whirlpool Corp.*, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021).

parade of horribles stemming from use of session replay software. But, as Plaintiff knows, these articles are not about Noom; nor do they analyze Noom's website or any data it collects from users. Even Plaintiff's cherry-picked articles concede that "[t]here are innocuous reasons for site owners to want [session replay software] data," including as "a powerful customer support tool."[3] Indeed, a website collecting data regarding visitor interactions to use for troubleshooting and analytics purposes is not nefarious; it is a well-established technology beneficial to websites and users alike.[4]

The Complaint suffers from numerous fatal defects. **First**, there is no personal jurisdiction over Noom in Pennsylvania; Plaintiff concedes that Noom is incorporated and headquartered elsewhere. Noom does not direct or target its activities specifically at Pennsylvania differently than it does at other states from which users access its website. **Second**, Plaintiff's WESCA claim fails because she has not pled, as the law requires, that any "contents" of any communication between herself and Noom were "intercepted" through the use of a "device." Importantly, she also consented to the challenged activity, which is an independent ground for dismissal. **Third**, Plaintiff does not state a claim for intrusion upon seclusion because she has failed to allege that an intentional intrusion occurred upon the seclusion of another in a highly offensive manner.

## II. Background

**The Parties and Jurisdictional Facts.** Noom is organized under the laws of Delaware, headquartered in New York, New York, and operates a mobile application that has helped millions of users lose weight and lead healthier lives through behavioral change. *See* Compl. ¶¶ 6, 42. Users can sign up for Noom through its website (www.noom.com, or "Website") and access its weight

---

[3] Eric Ravenscraft, *Almost Every Website You Visit Records Exactly How Your Mouse Moves*, OneZero (Feb. 4, 2020), https://onezero.medium.com/almost-every-website-you-visit-records-exactly-how-your-mouse-moves-4134cb1cc7a0; *see* Compl. ¶ 23 n.16.

[4] A federal court in California court has previously rejected these very same claims under California law against Noom, agreeing that session replay is a "tool" that allows websites "to record and analyze its own data in aid of [its] business." *See Graham,* F. Supp. 3d 823, at 832.

loss program through Noom's mobile application.

Plaintiff alleges that at all relevant times, she resided in and was a citizen of Pennsylvania. *See id.* ¶ 5. The only other jurisdictional allegations here are that Noom (1) "knew that its practices would directly result in collection of information from Pennsylvania citizens," (2) "kn[ew] that many users visit and interact with Noom's website[] while they are physically present in Pennsylvania," and (3) "collect[ed] real-time data from website visit sessions initiated by Pennsylvanians while located in Pennsylvania." Compl. ¶¶ 8-9. Tellingly, nowhere does Plaintiff allege that Noom specifically targeted its marketing or business operations to reach potential users in Pennsylvania as opposed to users nationwide (including Pennsylvania).

**Session Replay Software.** Plaintiff alleges that Noom placed on its Website snippets of computer code written by third-party session replay providers like FullStory ("Session Replay Code"). According to Plaintiff, these codes are designed to "obtain certain information about her device, browser, and create a unique ID and profile for her" when she (or other visitors) interacted with webpages on www.noom.com. *Id.* ¶¶ 1, 52. Plaintiff states that during a visit to Noom's Website, she "browsed for different products for sale and signed up for a trial membership," and in doing so, "communicated with [the Website] by using her mouse to hover and click on certain products and services and typing her personal information in text fields." *Id.* ¶ 51. Plaintiff alleges that such communications were "instantaneously captured" by the Session Replay Code on the Website and sent to FullStory and other unnamed session replay providers. *Id.* ¶¶ 44, 52-53.

Given Plaintiff's counsel's rush to file numerous copy-and-paste complaints generally attacking session replay technology, it is unsurprising that the Complaint contains almost no details about Noom's implementation of FullStory's session replay technology on its Website. Indeed, Plaintiff fails to allege how the FullStory technology actually works to collect and transmit visitor data. Instead, the Complaint relies on articles and reports to provide a generic explanation of

session replay technology on websites generally. Plaintiff alleges, for example, that session replay technology can allow "a website to capture and record nearly every action a website visitor takes while visiting the website." *Id.* ¶¶ 22-23; *see id.* ¶¶ 25-35 (describing what "most" or "some" Session Replay Codes "may" do). While Plaintiff alleges that FullStory's software may record certain information, *id.* ¶¶ 45-46, her descriptions of what the software ***can*** do are wholly untethered to the claims in this lawsuit and instead merely mimic the generic allegations in plaintiff's counsel's thirteen other cases. Plaintiff's failure to link the allegations derived from cited publications to Noom or FullStory is telling, as she concedes that "[t]he types of events captured by Session Replay Code vary by specific product and configuration." *Id.* ¶ 25.

In a similar vein, Plaintiff alleges that Session Replay Code like FullStory's can record information typed by website visitors while on the website, which "can include names, emails, phone numbers, addresses, social security numbers, date of birth, and more." *Id.* ¶ 45. But once again, Plaintiff fails to specifically identify her personal information that was allegedly recorded by Session Replay Code on Noom's Website. Plaintiff only alleges vaguely that "her personal information in text fields" and "certain information about her device [and] browser" were captured, without detailing what actual information was purportedly recorded. *Id.* ¶¶ 51-52.

**Noom's Disclosures of Session Replay Software.** Plaintiff admits she "signed up for a trial membership" with Noom, *id.* at ¶ 51, though she does not provide a date for her membership activation. Since at least as early as December 22, 2020, any individual signing up for a trial membership through Noom's website was required to click to agree to Noom's Privacy Policy ("Privacy Policy") as well as its Terms and Conditions of Use (the "Terms"). *See* Declaration of Brent Zajaczkowski ("BZ Decl.") at ¶¶ 4-5.

The Privacy Policy in place during the relevant time period, among other things, disclosed in relevant part (*see* BZ Decl., Ex. B at 7; *id.* ¶ 8):

> **Embedded Scripts**. An embedded script is programming code that is designed to collect information about User's interactions with the Website, Mobile App and Services, such as the links User clicks on. The code is temporarily downloaded onto User's Device from Noom's web server and/or Mobile App or a third party service provider, is active only while User is connected to the Website and/or Mobile App, and is deactivated or deleted thereafter.

## III. LEGAL STANDARD

Plaintiff bears the burden of establishing personal jurisdiction under Rule 12(b)(2). *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). Where the Court is sitting in diversity, the Court applies the law of the forum state—Pennsylvania. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Pennsylvania's "long-arm" statute is coextensive with federal due process. *See* 42 Pa. Cons. Stat. § 5322(b).

Pursuant to Rule 12(b)(6), the Court should dismiss a complaint where it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not" survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. THE COURT LACKS PERSONAL JURISDICTION OVER NOOM

Personal jurisdiction can be either general (all-purpose) or specific (case-specific or claim-linked). *Danziger*, 948 F.3d at 129. Plaintiff's allegations here do not come close to establishing general jurisdiction, as the company is incorporated in Delaware and headquartered in New York, and Plaintiff pleads no exceptional circumstances that would warrant the exercise of such jurisdiction. *See* Compl. ¶ 6. *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 n.19 (2014) (a corporation's "place of incorporation and principal place of business are paradigm bases for general jurisdiction" and only in an "exceptional case" will such jurisdiction be available anywhere else (cleaned up)); *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (an exceptional case is "incredibly difficult to establish").

Specific personal jurisdiction over a nonresident defendant is only available if plaintiff establishes "with reasonable particularity" that (1) defendant "purposefully directed its activities at the forum," (2) plaintiff's claims "arise out of or relate to the defendant's activities, and (3) defendant has "minimum contacts" with the forum such that exercising personal jurisdiction does not "offend traditional notions of fair play and substantial justice." *Danziger*, 948 F.3d, at 129-30 (cleaned up). Plaintiff's Complaint fails to plead facts establishing the first two elements, and her Complaint should therefore be dismissed.

**A. Plaintiff Fails to Plead Purposeful Availment**

In assessing this factor in the context of websites, the Third Circuit follows the "sliding scale test" established by *Zippo Manufacturing Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1122-23 (W.D. Pa. 1997), where "the propriety of exercising jurisdiction depends on where on a sliding scale of commercial interactivity the web site falls." *Toys "R" Us v. Step Two*, 318 F.3d 446, 452 (3d Cir. 2003). Under this test, personal jurisdiction exists "where a defendant uses an interactive commercial website to actively transact business with residents of the forum state." *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 211 (3d Cir. 2014). However, "mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Toys*, 318 F.3d, at 454. "[T]here must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id.*; *see M.H. v. Omegle.com*, 2021 WL 1050234, at *4 (D.N.J. Mar. 19, 2021) ("[C]ourts generally have held that websites providing [online learning] platforms … do not evince purposeful direction because they are not tailored to any forum"); *Kuan Chen v. U.S. Sports Acad.*, 956 F.3d 45, 60-61 (1st Cir. 2020) (no personal jurisdiction over "highly interactive" website because it did not target forum residents or knowingly derive substantial traffic from them).

Plaintiff fails to make such a showing here; to the contrary, she merely alleges in a conclusory fashion that Noom "market[s] and sell[s] its services in Pennsylvania," Compl. ¶ 8. General efforts "to exploit a national market [that] necessarily included Pennsylvania as a target" do not amount to purposeful availment that would justify exercise of specific jurisdiction. *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009). Plaintiff also alleges that she signed up for a trial membership after browsing Noom's Website (Compl. ¶ 51), but that is a far cry from alleging that "the website targeted forum residents in any way." *M.H.*, 2021 WL 1050234, at *4 (interactive website not subject to specific jurisdiction; noting that "if we attach too much significance to the fact of interactivity, then most websites would open a defendant up to jurisdiction anywhere in the world" (cleaned up)). In any event, "Plaintiff['s] interactions with Defendants do not, standing alone, constitute purposeful availment[]." *Hadnagy v. Moss*, 2023 WL 114689, at *13 (E.D. Pa. Jan. 5, 2023).

### B. Plaintiff Fails to Plead That Her Claims Arise Out of or Relate to Noom's Activities in Pennsylvania

For this second factor, the three-part "effects" test provided in *Calder v. Jones*, 465 U.S. 783 (1984), applies to intentional tort claims like Plaintiff's wiretap and intrusion upon seclusion claims alleged here. *Danziger*, 948 F.3d at 130 (applying *Calder* test to determine whether intentional tort claims "arise out of or relate to" defendant's contact with forum); *see Kyko Glob., Inc. v. Bhongir*, 807 F. App'x 148, 152 (3d Cir. 2020) (similar); *Maser v. Deeble*, 2017 WL 930795, at *4 (W.D. Pa. Mar. 9, 2017) (applying *Calder* to intrusion upon seclusion claim); *Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *3-4 (E.D. Cal. Sept. 30, 2022) (applying *Calder* to similar wiretap claim under California law). Under the *Calder* test, Plaintiff must plead that (1) Noom "committed an intentional tort," (2) Plaintiff "felt the brunt of the harm" in Pennsylvania and (3) Noom "expressly aimed" its conduct at Pennsylvania. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). With regard to the third prong, Plaintiff must (i) "point to ***specific***

***activity***" indicating that Noom "expressly aimed" its conduct at Pennsylvania and (ii) show that Noom "***knew*** that [Plaintiff] would suffer the brunt of the harm" in Pennsylvania. *Id.* at 266 (emphasis added). Plaintiff fails to satisfy both elements of the third prong of the *Calder* test.

***First***, Plaintiff does not allege that Noom expressly aimed its conduct at Pennsylvania. Where a website "makes itself available to anyone who seeks it out, regardless of where they live … the mere fact that the website is accessible in a given state does not mean that [defendant] is targeting its activities at that state." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 141 (4th Cir. 2020); *see also Motus, LLC v. CarData Consultants Inc.*, 520 F. Supp. 3d 87, 92 (D. Mass. 2021) (a website available "to anyone with internet access" does not specifically target a particular state); *Voltaix, LLC v. NanoVoltaix, Inc.*, 2009 WL 3230887, at *3 (D.N.J. Oct. 1, 2009) (similar).

*Hadnagy* is instructive. There, plaintiffs argued that defendants "expressly aim[ed] their tortious conduct" at Pennsylvania by publishing an allegedly defamatory report on their website, which was "accessible and widely disseminated, including throughout Pennsylvania." *Hadnagy*, 2023 WL 114689 at *6-7. The court held that plaintiffs failed to point to "specific tortious activity expressly aimed at Pennsylvania," because there were no facts to support that the alleged tort (*i.e.*, publication of the report) was "***specifically circulated or concentrated*** in Pennsylvania." *Id.* at *7 (emphasis added). It therefore concluded there was no personal jurisdiction over defendants. *Id.*

Similarly, here Plaintiff alleges that Noom "directed" its allegedly tortious conduct towards Pennsylvania by operating a website available on the Internet that "collect[s] real-time data from website visit sessions initiated by Pennsylvanians while located in Pennsylvania." Compl. ¶ 8. But like the report in *Hadnagy*, Noom's Website is accessible "throughout the United States and abroad," 2023 WL 114689, at *7, and Plaintiff fails to allege that Noom engaged in any Pennsylvania-specific activities or business operations. As such, the mere fact that Plaintiff was physically present in Pennsylvania when she visited Noom's website (*see* Compl. ¶¶ 8-9) is

insufficient. Any other conclusion would subject defendants with a nationwide app or website to "personal jurisdiction in the United States," which would "eviscerate the limits on personal jurisdiction over out-of-state defendants." *Media3 Techs., LLC v. CableSouth Media III, LLC*, 17 F. Supp. 3d 107, 112 (D. Mass. 2014).

***Second***, Plaintiff also does not plead that Noom "knew" that Plaintiff "would suffer the brunt of the harm" in Pennsylvania (indeed, the complaint fails to allege any concrete harm at all). *IMO Indus.*, 155 F.3d at 266. A website that is "accessible worldwide" provides no basis to conclude that a defendant "kn[ew] that harm [to plaintiff] was likely to be caused" in a particular forum. *Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001); *see also Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *4 (E.D. Cal. May 26, 2021) (holding that defendant's "operation of an internationally accessible website" that allegedly used session replay software is, without more, "insufficient to serve as a ground for personal jurisdiction"); Ex. 1 at 2, 11-13 (*Licea v. Caraway Home Inc.*, No. EDCV 22-cv-01791 JGB (SHKx), 2023 WL 1999496, at *1-2, *8-9 (C.D. Cal. Feb. 9, 2023)) (dismissing lawsuit alleging that plaintiff's communications with defendant's website were recorded where the complaint lacked the "necessary factual allegations" to show "if, or how, [defendant] aimed any of its business at California").

As noted, Noom's website is "accessible worldwide" and Plaintiff fails to allege any facts suggesting that Noom knew the harm to Plaintiff "was likely to be caused" in Pennsylvania. *Remick*, 238 F.3d at 259. Even if Noom was aware that Pennsylvania residents may visit its website and data would be collected from such individuals (Compl. ¶¶ 8-9), "the foreseeability of harm being suffered in a forum is insufficient to establish personal jurisdiction under *Calder*." *LaSala v. Marfin Popular Bank*, 410 F. App'x 474, 477 (3d Cir. 2011) (citing *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007)); *see AMA Multimedia v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020).

Plaintiff fails to satisfy the third prong of the *Calder* test, and the Court need not consider

the other two prongs. *See Marten*, 499 F.3d at 297. Thus, the Complaint should be dismissed.

## V. THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(b)(6)

Even if the Court were to find that it has personal jurisdiction over Noom, it should still dismiss the case under Rule 12(b)(6) because Plaintiff fails to state any claim against Noom.

### A. Plaintiff Fails to State a Claim under the WESCA

Under the WESCA Plaintiff must allege that Noom "intentionally intercept[ed]" an electronic communication. 18 Pa. Cons. Stat. §§ 5703, 5725(a).[5] Notably, there is no liability where all parties have consented. *Id.* § 5704(4). The Complaint here fails to state a claim under the WESCA.

#### 1. Plaintiff Does Not Plead Interception

Plaintiff baldly alleges that her "communications" with Noom were "intercepted" in violation of the WESCA, *Id.* § 5703. Compl. ¶¶ 82-83. However, for Noom to have intercepted her communications, the statute requires that the "contents" of any communication between herself and Noom were intercepted through the use of a "device." 18 Pa. Cons. Stat. § 5702 ("Aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device."). Plaintiff has not and cannot plead a "device" was used to acquire the "contents" of her electronic communications. She therefore cannot establish an "interception" occurred under the WESCA and her wiretapping claim should be dismissed.

##### a. Plaintiff Fails to Allege the Use of Any Device

Contrary to Plaintiff's conclusory allegation (*see* Compl. ¶ 81), software code on Noom's website is not a "device" within the meaning of the WESCA. The statute defines this term as "[a]ny device or apparatus, including, but not limited to, an induction coil or a telecommunication

[5] The statute also provides that Plaintiff may bring a claim by alleging that Noom intentionally disclosed to another the contents of an electronic communication or that Noom intentionally used the contents of the communication. *See* 18 Pa. Cons. Stat. §§ 5703, 5725(a). Neither is pled here.

identification interception device, that ***can be used to intercept a wire, electronic or oral communication*** other than" certain instruments or equipment specified in the statute. 18 Pa. Cons. Stat. § 5702 (emphasis added). As detailed below, the statute's plain language and longstanding precedent make clear that mere software does not qualify as a "device."

***First***, Plaintiff's attempt to characterize session replay software as a "device" violates the canons of statutory interpretation. Under Pennsylvania law, statutory language "must be given effect in accordance with its plain and common meaning," and courts "should not disregard the language of the law in the context of pursuing its spirit." *Commonwealth v. Kelley*, 569 Pa. 179, 184-85 (2002). Interpretation of statutes should be according to definitions "acquired through their common and approved usage." *Commonwealth v. Hart*, 611 Pa. 531, 547 (2011). And in so doing, Pennsylvania courts routinely refer to dictionary definitions. *Id.* at 549 ("common and approved usage" of a term may be "ascertained by examining its dictionary definition").

Applied here, it is clear that a "device" must be something more than software code alone. Black's Law Dictionary defines "device" as a "mechanical invention" that may be "an apparatus or an article of manufacture," and further refers to the definition of "machine." Black's Law Dictionary (11th ed. 2019). The non-legal dictionary definition of this term similarly indicates that "device" refers to tangible objects. *See, e.g.*, The American Heritage Dictionary of the English Language, *Device*, https://www.ahdictionary.com/word/search.html?q=Device (last visited Feb. 16, 2023) ("An object designed and manufactured to perform one or more functions."). Software code on a website is not something tangible like a "mechanical invention" or "machine." Consistent with these definitions, Pennsylvania courts have similarly interpreted "device" in other contexts to mean a tangible thing or object, like a computer tablet or smartphone. *See Commonwealth v. Diego*, 119 A.3d 370, 376 (Pa. Super. Ct. 2015) (computer tablet); *Commonwealth v. Smith*, 136 A.3d 170, 178 (Pa. Super Ct. 2016) (smartphone). Moreover, the

examples the state legislature included within the statutory definition—an "induction coil" and "telecommunication identification interception device"—make clear that a "device" is tangible. 18 Pa. Cons. Stat. § 5702. And the examples of exceptions to the definition of "device" also are tangible things: "equipment," "hearing aid," "telephone/telegraph instrument," and "facility." *Id.* As such, the meaning of "device" as contemplated by the WESCA does not extend to snippets of Session Replay Code on Noom's website.[6]

***Second***, analogous precedents involving the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523 (the "Federal Wiretap Act") also establish that mere software is not a "device." The WESCA was modeled after the Federal Wiretap Act, and the Third Circuit has clearly held that the two laws should be "interpreted in the same way." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 & n.6 (3d Cir. 2003), *as amended* (Jan. 20, 2004). Accordingly, case law applying the Federal Wiretap Act is instructive here.

Numerous courts across the country have held that software is not a "device" under the Federal Wiretap Act or other state wiretap laws that were modeled after the federal law[7]. For example, the court in *Potter v. Havlicek*, 2008 WL 2556723 (S.D. Ohio June 23, 2008), held that the software at issue was "not a device as contemplated by" the Federal Wiretap Act because software "alone cannot be used to intercept communications," but rather had to "be installed in a device, such as a computer." *Id.* at *8. In addition, the *Potter* court, and others, found that the plain meaning of "the word 'device' does not encompass software" given that the dictionary definitions described a "device" as "a piece of equipment or a mechanism." *Id.*; *see, e.g.*, *Cardoso v. Whirlpool*

[6] Any ambiguity regarding the tangibility of a "device" under the WESCA should also be resolved in Noom's favor under the rule of lenity. *See Hartford Steam Boiler Inspection v. Int'l Glass Prods., LLC*, 2016 WL 5468111, at *16 (W.D. Pa. Sept. 29, 2016) (applying rule of lenity to civil application of Pennsylvania criminal statute).

[7] The Federal Wiretap Act defines "device" as "any device or apparatus which can be used to intercept" an electronic communication other than certain equipment. *See* 18 U.S.C. § 2510.

*Corp.*, 2021 WL 2820822 at *2 (S.D. Fla. July 6, 2021) (dismissing Florida wiretap claim modeled off federal law because session replay software is not an "electronic, mechanical, or other device"); *Connor v. Whirlpool Corp.*, 2021 WL 3076477, at *2 (S.D. Fla. July 6, 2021) (same); *see also United States v. Ackies*, 918 F.3d 190, 199 n.5 (1st Cir. 2019) (software is not a "device" under the "plain meaning" of Federal Stored Communications Act); *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 4394447, at *4-5 (E.D. Pa. Dec. 13, 2007) (finding the "drive or server on which an e-mail is received does not constitute a device" under the Federal Wiretap Act).

Similarly, here the Complaint admits that FullStory's Session Replay Code cannot intercept any communications on its own, but rather must be "embed[ded]" onto a website and be further "deploy[ed] on each website visitor's internet browser" before it can allegedly begin "intercepting and recording the website visitor's electronic communications." Compl. ¶ 1; *see id.* ¶¶ 22-24. This does not refer to a tangible object or machine and as such, does not qualify as a "device." *See Potter*, 2008 WL 2556723, at *8.

Lastly, the Complaint offers no basis to distinguish the above authority or to support her contention that FullStory's Session Replay Code is a "device." Its single, conclusory allegation that the "Session Replay Code like that procured by Noom is a 'device,'" Compl. ¶ 81, does not satisfy applicable pleading requirements and cannot save Plaintiff's claim. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 681 ("threadbare recitals" and "conclusory statements" in the complaint should be disregarded).

#### b. Plaintiff Fails to Allege that Noom Acquired the Contents of Her Website Communications

Plaintiff's WESCA claim fails for the additional and independent reason that the Complaint does not allege that Noom acquired the "contents" of her communications. Indeed, Plaintiff either fails to describe the exact nature or substance of the information collected or refers generally to categories of information that Noom may have collected that do not actually amount to "contents"

under the WESCA. Both deficiencies are fatal to Plaintiff's claim.

The WESCA defines "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 Pa. Cons. Stat. § 5702. This term is defined identically in the Federal Wiretap Act. *Compare id. with* 18 U.S.C. § 2510. Thus, cases construing this identical term under the Federal Wiretap Act are instructive. *See Fraser*, 352 F.3d at 113 n.6.

In interpreting the Federal Wiretap Act, courts have held that "contents" means "the intended message conveyed by the communication and does not include record information regarding the characteristics of the message that is generated." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see U.S. v. Reed*, 575 F.3d 900, 914-15 (9th Cir. 2009) (record information includes time, length, and origination of a communication). The term "contents" as used in the Federal Wiretap Act thus does not include "dialing, routing, addressing, or signaling" information, such as "addresses, phone numbers, and URLs … when they are performing such a function." *In re Google Cookie Placement Litig.*, 806 F.3d 125, 137 (3d Cir. 2015).

Applying these principles here, Plaintiff's sparse allegations fail to state a claim. At most, Plaintiff describes the type of information that Noom ***may*** have collected — "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, network requests" and the like. Compl. ¶ 46. But a plaintiff's online "movements" on a website are not "contents" contemplated by the WESCA because they "d[o] not convey the substance of any particular communication." *Accord Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1322 (S.D. Fla. 2021) (holding that mouse movements, clicks, pages visited, and keystrokes, including information input by the plaintiff, were not "contents" under Florida wiretap law); *cf. Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021) (clicks, pages visited, and keystrokes, including shipping and billing information, are not "contents" under California wiretap law).

Plaintiff also refers to "certain information about her device" and her "personal information" that she typed into text fields that were allegedly captured by the Session Replay Code, but she does not specify the exact nature or substance of such information. Compl. ¶¶ 51-52. This is too vague to establish interception of the contents of her communications. *Cf. Goldstein*, 559 F. Supp. 3d at 1320-22 (dismissing claim where session replay software allegedly captured "information inputted" into a website). Plaintiff's conclusory allegation that "any operational iteration of the Session Replay Code will, by its very nature and purpose, intercept the contents of [her] communications" does not save her claim. Compl. ¶ 56.

These pleading flaws are exacerbated by Plaintiff's concession that "Noom masks certain elements when it configures the settings of the Session Replay Code embedded on its website." Compl. ¶ 56. Plaintiff fails to explain what kind of content is masked on Noom's Website and what that "masking" means in this context. *Id*. Does masking information prevent it from being transmitted to a third party? The Complaint does not say. Plaintiff then claims that despite this masking, certain "substantive" information is allegedly transmitted to FullStory, including "which pages a user navigates to" and "how the user moves through the page," (Compl. ¶ 57) but those two pieces of information are merely record information of the pages viewed and where the cursor moved on a page, not protected "contents." *In re Google*, 806 F.3d at 137 (address information, such as "URLs" of visited webpages, is not content). Plaintiff has, in short, failed to plead that the "contents" of any communication were allegedly intercepted here, and her WESCA claim fails.

### 2. Plaintiff Consented to the Alleged Data Collection

As the Third Circuit noted, "if someone consents to the interception of her communications with a website, the WESCA does not impose liability." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022); *see* 18 Pa. Cons. Stat. § 5704(4). Consent under Pennsylvania law can be demonstrated when the person being recorded "knew, ***or should have known***, that the conversation

was recorded." *Popa*, 52 F.4th at 129 (quoting *Commonwealth v. Byrd*, 661 Pa. 85, 98 (2020) (emphasis added; internal quotations omitted)). "This standard is one of a reasonable person [ ]" *Byrd*, 661 Pa. at 98. Indeed, consent does not require "actual knowledge that he or she is being recorded." *Id.* Here, Plaintiff has consented to the alleged conduct.

To begin, Plaintiff expressly agreed to Noom's Privacy Policy and Terms when she signed up for her trial membership. *See* BZ Decl. ¶¶ 4-5. Those agreements clearly informed visitors to the Website that their data may be collected, used, and/or shared. The Privacy Policy states, *inter alia*, that Noom "may use various methods and technologies to store or collect" the personal information of its Website visitors, including via the use of "embedded script[s]" "designed to collect information about User's interactions with the Website, … such as the links User clicks on," and specifies that "Noom's third-party service providers may use a variety of technologies that automatically (or passively) store or collect certain information whenever User visits or interacts with the Website." BZ Decl., Ex. B at 5-7.[8] The Terms further required Plaintiff to (1) "acknowledge and agree" that "a Third-Party Service Provider may collect and use certain information about [her], which may include personal information" and (2) "hereby grant Noom … [a] non-exclusive right (including any moral rights) and license (as well as consent) to use, license, reproduce, … transmit … and otherwise use any User Content (in whole or in part and with or without the use of your name) worldwide." *Id.*, Ex. A at 19, 32. This alone establishes consent.

Moreover, Plaintiff should have known that her interactions with Noom's website could be collected and analyzed. Pennsylvania courts have noted that "[a]ny reasonably intelligent person, savvy enough to be using the Internet … would be aware of the fact that messages are received in

[8] Noom's Privacy Policy also states that "Noom may use cookies or other Tracking Technologies that Noom considers is strictly necessary to allow User to use and access Noom's Website" "including cookies required for system administration, to prevent fraudulent activity, or to improve." BZ Decl., Ex. B at 8.

a recorded format[]" *Commonwealth v. Proetto*, 771 A.2d 823, 829 (Pa. Super. Ct. 2001), *aff'd,* 575 Pa. 511 (2003); *see also Diego*, 119 A.3d at 377 (a reasonable person's knowledge that he or she is being recorded may be "surmised from the very nature of the selected means of transmission"). As the Third Circuit acknowledged, "[m]ost of us understand that what we do on the Internet is not completely private," and "recognize, even if only intuitively, that our data … feed[s] an entire system of trackers, cookies, and algorithms designed to capture and monetize the information we generate." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d, 262, 266 (3d Cir. 2016). Thus, upon applying the "reasonable person" standard, by "the very act of sending a communication over the Internet," Plaintiff should at least have known that she was "expressly consent[ing] to the recording" of her Website communications. *Proetto*, 771 A.2d at 829; *see Popa*, 52 F.4th at 129; *Byrd*, 661 Pa. at 98-99.

In addition, Plaintiff also consented to the collection of her data on Noom's website by her conduct. In *Byrd*, the Pennsylvania Supreme Court held that a prisoner "consent[ed] by conduct" when he spoke with a visitor by telephone after receiving a warning message that his communication "may be monitored or recorded." *Byrd*, 661 Pa. at 99. The *Byrd* court found that the prisoner consented even though he "may not have heard" the warning, because a "reasonably intelligent person" would have known that he or she is being recorded. *Id.* at 93, 97.

Here, when Plaintiff visited Noom's Website, the link to Noom's Privacy Policy was underlined and conspicuously available on Noom's Website. *See* Compl. ¶ 62; *cf. James v. Glob. TelLink Corp*, 852 F.3d 262, 267 (3d Cir. 2017) (noting that a browsewrap agreement's enforceability "turn[s] on whether the terms or a hyperlink to the terms are reasonably conspicuous on the webpage"). Noom's Privacy Policy put Plaintiff on notice that her interactions with the Website may be "monitored or recorded." *Byrd*, 661 Pa. at 99. A reasonable person visiting Noom's Website who continued browsing the site and completed the sign-up process for a trial

membership with Noom, as the Plaintiff did here (Compl. ¶ 51), "consent[ed] by conduct" to Noom's collection of her online communications with the Noom Website. *Byrd*, 661 Pa. at 99.

**B. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion.**

To establish an intrusion upon seclusion, Plaintiff must prove there was (1) an intentional intrusion, (2) upon the solitude or seclusion of another, (3) in a manner that would be highly offensive to a reasonable person. *See* Restatement (Second) of Torts § 652B (1977); *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 259-60 (3d Cir. 2004). Plaintiff fails to plead each of these elements.

**1. Plaintiff Does Not Plead an Intentional Intrusion**

"[A]n actor commits an ***intentional*** intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989) (emphasis in original). Plaintiff does not and cannot allege that Noom believed it lacked the necessary legal permission to embed Session Replay Code on its Website. Such technology has not been barred in any jurisdiction. To the contrary, courts have routinely dismissed similar claims under other state's wiretapping laws, including a similar challenge to Noom's use of FullStory's session replay software under California's wiretapping law. *See, e.g.*, *Graham*, 533 F. Supp. 3d at 838; *Goldstein*, 559 F. Supp. 3d at 1322; *Yale*, 2021 WL 1428400, at *3. As Plaintiff admits, this technology is "utilized by websites for some legitimate purposes." Compl. ¶ 23.

Plaintiff's failure to plead intent is unsurprising, since Noom's Privacy Policy, to which Plaintiff agreed, plainly discloses the purportedly unlawful conduct. *See id.* ¶ 61. As discussed above, the policy explains in detail the nature of the information Noom collects from website users, including via arrangements with third parties. *See supra* Section I.A.2; BZ Decl., Ex. B.

The Privacy Policy—made conspicuous on Noom's Website through an underlined hyperlink, *see* Compl. ¶ 62; *James*, 852 F.3d at 267, and agreed-to by anyone who, like Plaintiff,

signed up for a trial membership—establishes that Noom lacked the requisite intent regarding the legal permission to commit the alleged data collection here.

### 2. Plaintiff Fails to Allege A Reasonable Expectation of Privacy Over Her Actions on Noom's Website

To plead this element, Plaintiff must allege a reasonable expectation of privacy in the place intruded on. *See Kline*, 386 F.3d at 260 (3d Cir. 2004). An individual cannot reasonably expect her interactions with a website, including the "clicks and keystrokes" performed while browsing the website and the personal information freely provided to the website, are private as to that website. *See Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1025 (N.D. Cal. 2012) (no serious privacy interest in the browsing history of profiles that one has clicked on); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *14-15(N.D. Cal. Mar. 26, 2013) (no legally protected privacy interest harmed when company provided users' personally identifiable information to advertisers for marketing purposes). Thus, Plaintiff's allegations about her interactions with the website cannot form the basis for a privacy interest of an intrusion claim.

Plaintiff also cannot expect information she "voluntarily turn[ed] over to third parties," to support an intrusion claim, especially when a party "is forewarned of the possible disclosure of information." *United States v. Bowers*, 2021 WL 2882438, at *3 (W.D. Pa. July 8, 2021) (citation omitted). Thus, to the extent Plaintiff alleges that the Session Replay Code captured Plaintiff's unspecified "personal information" (*see* Compl. ¶ 51), such information was freely and voluntarily provided by Plaintiff, and she cannot make an intrusion claim on that basis. *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979). Finally, Noom's Privacy Policy, which she expressly assented to as part of her trial membership (*see* Compl. ¶ 51) and which was available on Noom's Website, also forewarned Plaintiff that her actions on the site were subject to monitoring by Noom and its third-party partners. *See supra* Section I.A.2. Given the above, Plaintiff cannot establish a legally protected privacy interest in her actions on Noom's Website, and her claim must fail.

### 3. The Alleged Conduct is not Highly Offensive to the Reasonable Person

This Court has held that "the type of conduct that may be considered sufficiently offensive" as to give rise to an intrusion upon seclusion claim must be "***of the sort which would cause mental suffering, shame or humiliation to a person of ordinary sensibilities***." *Popa*, 426 F. Supp. 3d at 122 (emphasis in original) (quoting *Chicarella v. Passant*, 343 Pa. Super. 330, 339 (1985)). This is a high bar, which Plaintiff fails to meet.

Pennsylvania courts make clear the intrusion must involve highly sensitive information. In *Chicarella*, for instance, the court denied an intrusion claim against a private investigator who obtained the plaintiff's private medical records and supplied them to the plaintiff's opponent in a lawsuit. 343 Pa. Super. at 335, 339-40. In *Nagy v. Bell Telephone Co.*, a plaintiff who was harboring a spouse from her abusive husband asked the telephone company to keep secret call records. 292 Pa. Super. 24, 26 (1981). The husband persuaded the company to give him the records, and the court denied plaintiff's subsequent intrusion claim against the company. *Id.* at 30-31.

Here, Noom's alleged conduct is nowhere near as "offensive" as the conduct in *Chicarella* and *Nagy*. Plaintiff does not allege that the unspecified "personal information" she provided to Noom (Compl. ¶¶ 51-52) contains sensitive information, like the medical records in *Chicarella* or records that pose a threat to a family's physical safety, like in *Nagy*. Nor does Plaintiff even attempt to allege that Noom's collection of her information caused "mental suffering, shame or humiliation." *Popa*, 426 F. Supp. 3d at 122. Indeed, as this Court held, "the act of collecting … keystrokes, mouse clicks, and [personal identifiable information] is simply not the type of highly offensive act to which liability can attach." *Id.* The Court should thus dismiss the intrusion claim.

## VI. CONCLUSION

For the foregoing reasons, Noom respectfully requests that the Court enter an order dismissing Plaintiff's Complaint in its entirety.

Dated: March 1, 2023

Respectfully submitted,

*/s/ Kyle C. Wong*
Kyle C. Wong*
kwong@cooley.com
Aarti Reddy*
areddy@cooley.com
Sharon Song*
ssong@cooley.com
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: 415-693-2000
*Admitted *Pro Hac Vice*

Maria Greco Danaher
PA I.D. No. 47036
Email: maria.danaher@ogletree.com
**OGLETREE DEAKINS**
One PPG Place, Suite 1900
Pittsburgh, PA 15222
Telephone: 412-394-3390

*Counsel for Defendant*
Noom, Inc.