**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ARIEL OLIVER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NOOM, INC.,<br><br>Defendant. | Case No. 2:22-cv-01857-WSS<br><br>Judge William S. Stickman IV<br><br>*Electronically Filed* |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NOOM, INC.'S**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
III. LEGAL STANDARD ..... 5
IV. THE COURT LACKS PERSONAL JURISDICTION OVER NOOM ..... 5
A. Plaintiff Fails to Plead Purposeful Availment ..... 6
B. Plaintiff Fails to Plead That Her Claims Arise Out of or Relate to Noom's Activities in Pennsylvania ..... 7
V. PLAINTIFF'S FAC FAILS UNDER RULE 8(A) ..... 9
VI. THE COURT SHOULD DISMISS THE FAC UNDER RULE 12(B)(6) ..... 9
A. Plaintiff Fails to State a Claim under WESCA ..... 9
1. Plaintiff Does Not Plead Interception ..... 10
a. Plaintiff Fails to Allege the Use of Any Device ..... 10
b. Plaintiff Fails to Allege that Noom Acquired the Contents of Her Website Communications ..... 13
2. Plaintiff Consented to the Alleged Data Collection ..... 16
B. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion. ..... 18
1. Plaintiff Does Not Plead an Intentional Intrusion ..... 18
2. Plaintiff Fails to Allege A Reasonable Expectation of Privacy Over Her Actions on Noom's Website ..... 19
3. The Alleged Conduct is not Highly Offensive to the Reasonable Person ..... 19
VII. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Brown*,
320 F. Supp. 3d 16 (D.D.C. 2018) .......... 13

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) .......... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5, 9

*Calder v. Jones*,
465 U.S. 783 (1984) .......... 7, 9

*Cardoso v. Whirlpool Corp.*,
2021 WL 2820822 (S.D. Fla. July 6, 2021) .......... 12

*Chicarella v. Passant*,
343 Pa. Super. 330 (1985) .......... 20

*Commonwealth v. Byrd*,
661 Pa. 85 (2020) .......... 16, 17

*Commonwealth v. Diego*,
119 A.3d 370 (Pa. Super. 2015) .......... 11, 16

*Commonwealth v. Hart*,
611 Pa. 531 (2011) .......... 10

*Commonwealth v. Hogue*,
2019 WL 3545843 (Pa. Super. Ct. Aug. 5, 2019) .......... 10

*Commonwealth v. Kelley*,
569 Pa. 179 (2002) .......... 10

*Commonwealth v. Proetto*,
771 A.2d 823 (2001), *aff'd,* 575 Pa. 511 (2003) .......... 16

*Commonwealth v. Smith*,
136 A.3d 170 (Pa. Super. 2016) .......... 11

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Connor v. Whirlpool Corp.*,
2021 WL 3076477 (S.D. Fla. July 6, 2021)....................12

*D'Jamoos v. Pilatus Aircraft Ltd.*,
566 F.3d 94 (3d Cir. 2009)....................6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................5

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
948 F.3d 124 (3d Cir. 2020)....................5, 7

*Fidrych v. Marriott Int'l, Inc.*,
952 F.3d 124 (4th Cir. 2020) ....................7

*Fraser v. Nationwide Mut. Ins. Co.*,
352 F.3d 107 (3d Cir. 2003), *as amended* (Jan. 20, 2004)....................11, 14

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021) .................... *passim*

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................14, 15

*Graham v. Noom, Inc.*,
2021 U.S. Dist. LEXIS 153095 (N.D. Cal. Aug. 13, 2021)....................1, 2, 18

*Hadnagy v. Moss*,
2023 WL 114689 (E.D. Pa. Jan. 5, 2023) ....................6, 7, 8

*Hartford Steam Boiler Inspection v. Int'l Glass Prods., LLC*,
2016 WL 5468111 (W.D. Pa. Sep. 29, 2016) ....................11

*Ideal Aerosmith v. Acutronic USA*,
2007 WL 4394447 (E.D. Pa. Dec. 13, 2007) ....................12

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998)....................7, 8

*James v. Glob. TelLink Corp*,
852 F.3d 262 (3d Cir. 2017)....................17, 19

*Kline v. Sec. Guards, Inc.*,
386 F.3d 246 (3d Cir. 2004)....................18, 19, 20

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**


*LaSala v. Marfin Popular Bank*,
410 F. App’x 474 (3d Cir. 2011) ....................9

*Licea v. Caraway Home Inc.*,
No. 5:22-cv-017971-JGB-SHKx, ECF No. 20 (C.D. Cal. Feb. 9, 2023) ....................8

*Liggon-Redding v. Souser*,
352 F. App'x 618 (3d Cir. 2009) ....................9

*Low v. LinkedIn Corp.*,
900 F.Supp.2d 1010 (N.D. Cal. 2012) ....................19

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) ....................13

*M.H. v. Omegle.com*,
2021 WL 1050234 (D.N.J. Mar. 19, 2021) ....................6

*Massie v. Gen. Motors Co.*,
2021 WL 2142728 (E.D. Cal. May 26, 2021) ....................8

*Media3 Techs., LLC v. CableSouth Media III, LLC*,
17 F. Supp. 3d 107 (D. Mass. 2014) ....................8

*Metcalfe v. Renaissance Marine, Inc.*,
566 F.3d 324 (3d Cir. 2009) ....................5

*Motus, LLC v. CarData Consultants Inc.*,
520 F. Supp. 3d 87 (D. Mass. 2021) ....................7

*Nagy v. Bell Telephone Co. of PA*,
292 Pa. Super. 24 (1981) ....................20

*In re Nickelodeon*,
827 F.3d 262 (3d Cir. 2016) ....................16

*O’Donnell v. United States*,
891 F.2d 1079 (3d Cir. 1989) ....................18

*Oliver v. Carnival Corp.*,
No. 2:22-cv-01855 (W.D. Pa. Dec. 22, 2022) ....................1

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ....................5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ....................16, 20

*Potter v. Havlicek*,
2008 WL 2556723 (S.D. Ohio June 23, 2008) ....................12, 13

*Remick v. Manfredy*,
238 F.3d 248 (3d Cir. 2001)....................8, 9

*Schnur v. JetBlue Airways Corp.*,
No. 2:22-cv-01621 (W.D. Pa. Nov. 15, 2022)....................1

*Shefts v. Petrakis*,
2012 WL 4049484 (C.D. Ill. Sept. 13, 2012) ....................13

*Smidga v. Spirit Airlines, Inc.*,
No. 2:22-cv-01578 (W.D. Pa. Nov. 7, 2022)....................1

*Smith v. Maryland*,
442 U.S. 735 (1979)....................19

*State v. Townsend*,
57 P.3d 255 (2002)....................16

*Swiggum v. Ean Servs., LLC*,
2021 U.S. Dist. LEXIS 132677 (M.D. Fla. July 16, 2021)....................1

*Toys "R" Us, Inc. v. Step Two*,
318 F.3d 446 (3d Cir. 2003)....................6

*U.S. v. Amen*,
831 F.2d 373 (2d Cir. 1987)....................17

*United States v. Ackies*,
918 F.3d 190 (1st Cir. 2019)....................12

*United States v. Barrington*,
648 F.3d 1178 (11th Cir. 2011) ....................13

*United States v. Bowers*,
2021 WL 2882438 (W.D. Pa. July 8, 2021) ....................19, 20

*United States v. Reed*,
575 F.3d 900 (9th Cir. 2009) ....................14

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Voltaix, LLC v. NanoVoltaix, Inc.*,
2009 WL 3230887 (D.N.J. Oct. 1, 2009)....................7

*Yale v. Clicktale, Inc.*,
2021 U.S. Dist. LEXIS 160038 (N.D. Cal. Aug. 24, 2021)....................1, 18

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................15

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)....................14

**Statutes**

18 Pa. C.S.
§ 5702....................10, 11, 14
§§ 5703, 5725(a)....................10
§ 5704(4)....................10, 16

Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523....................11, 12, 13, 14

Federal Stored Communications Act....................12

Pennsylvania's Wiretapping and Electronic Surveillance Control Act.................... *passim*

**Other Authorities**

American Heritage Dictionary of the English Language....................11

Black's Law Dictionary (11th ed. 2019)....................10

*Device*, https://www.ahdictionary.com/word/search.html?q=Device (last visited
Feb. 16, 2023)....................11

Medium (Feb. 5, 2020), https://onezero.medium.com/almost-every-website-you-visit-records-exactly-how-your-mouse-moves-4134cb1cc7a0....................2

Restatement (Second) of Torts § 652B (1977)....................18

Rule 8(a)....................5, 9

Rule 12(b)....................5, 9

## I. INTRODUCTION

This case is part of a coordinated campaign by plaintiff's counsel to use a criminal statute to impose staggering civil liability on the routine collection of website usage information that companies use to improve their websites' function and user experience. The plaintiff's bar has recently flooded the Pennsylvania courts with such claims, filing no fewer than twenty-nine similar lawsuits in the past nine months seeking statutory damages based on the flawed theory that various consumer websites, like Noom, violated Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA") by using "session replay" software to analyze data a visitor *voluntarily* sends to the website when browsing that website.[1,2]

Plaintiff's counsel in this action has led this campaign by filing more than thirteen nearly identical complaints challenging session replay technology. Plaintiff alleges that upon her visit to the Noom website, Noom embedded code from a third-party vendor, FullStory, to collect the data related to her interactions with the Noom website and transmit that data to FullStory without her consent. But, as with the other numerous copycat lawsuits challenging session replay software, the First Amended Complaint ("FAC") still suffers from the same dispositive flaws Noom identified in its first motion to dismiss, including pleading only general allegations about how the FullStory software works and failing to actually allege how that software is implemented on Noom's site despite conceding that the implementation of FullStory's session replay technology varies greatly.

The vast majority of Plaintiff's amended pleading focuses on villainizing any and all

---

[1] *See, e.g.*, *Oliver v. Carnival Corp.*, No. 2:22-cv-01855 (W.D. Pa. Dec. 22, 2022); *Schnur v. JetBlue Airways Corp.*, No. 2:22-cv-01621 (W.D. Pa. Nov. 15, 2022); *Smidga v. Spirit Airlines, Inc.*, No. 2:22-cv-01578 (W.D. Pa. Nov. 7, 2022).

[2] Pennsylvania is only the latest jurisdiction to confront these copycat actions. Courts have rejected similar claims in Florida and California, including against Noom. *See Graham v. Noom, Inc.*, 2021 U.S. Dist. LEXIS 153095 (N.D. Cal. Aug. 13, 2021) (dismissing with prejudice); *Yale v. Clicktale, Inc.*, 2021 U.S. Dist. LEXIS 160038 (N.D. Cal. Aug. 24, 2021); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1322 (S.D. Fla. 2021); *Swiggum v. Ean Servs., LLC*, 2021 U.S. Dist. LEXIS 132677 (M.D. Fla. July 16, 2021).

session replay technology. For instance, Plaintiff quotes from various third-party articles to suggest a parade of horribles stemming from use of session replay software. But, as Plaintiff knows, these articles are not about Noom; nor do they analyze Noom's website or any data it collects from users. Even Plaintiff's cherry-picked articles concede that "[t]here are innocuous reasons for site owners to want [session replay software] data," including as "a powerful customer support tool."[3] Indeed, a website collecting data regarding visitor interactions to use for troubleshooting and analytics purposes is not nefarious; it is a well-established technology beneficial to websites and users alike.[4]

Despite her amended allegations, the FAC still suffers from the same fatal defects of the original complaint. **First**, there is no personal jurisdiction over Noom in Pennsylvania; Plaintiff concedes that Noom is headquartered elsewhere. Noom does not target its activities specifically at Pennsylvania. **Second**, Plaintiff's WESCA claim fails because she has not pled that any "contents" of her communication were "intercepted" through the use of a "device." Importantly, she also consented to the challenged activity, which is an independent ground for dismissal. **Third**, Plaintiff's claim for intrusion upon seclusion fails because she has not alleged an intentional intrusion upon seclusion in a highly offensive manner. And because Plaintiff's amendments fail to cure any of these fundamental deficiencies, this Court should dismiss the FAC with prejudice.

## II. BACKGROUND

**The Parties and Jurisdictional Facts.** Noom is organized under the laws of Delaware, headquartered in New York, New York, and operates a mobile application that has helped millions of users lose weight and lead healthier lives through behavioral change. *See* FAC ¶¶ 6, 43. Users

---

[3] Eric Ravenscraft, *Almost Every Website You Visit Records Exactly How Your Mouse Moves*, Medium (Feb. 5, 2020), https://onezero.medium.com/almost-every-website-you-visit-records-exactly-how-your-mouse-moves-4134cb1cc7a0; *see* Compl. ¶ 23 n.16.

[4] A federal court in California court has previously rejected these very same claims under California law against Noom, agreeing that session replay is a "tool" that allows websites "to record and analyze its own data in aid of [its] business." *See Graham,* 2021 WL 1312765, at *5.

can sign up for Noom through its website (www.noom.com, or "Website").

Plaintiff alleges that at all relevant times, she resided in Pennsylvania. *See* FAC ¶ 5. The only other jurisdictional allegations here are that Noom (1) "knew that its practices would directly result in collection of information from Pennsylvania citizens," (2) "kn[ew] that many users visit and interact with Noom's website[] while they are physically present in Pennsylvania," and (3) "collect[ed] real-time data from website visit sessions initiated by Pennsylvanians while located in Pennsylvania." *Id.* ¶¶ 8-9. In amending her complaint, Plaintiff added the conclusory allegation that Noom "targeted its good and services to Pennsylvania citizens," but alleges no facts in support. In fact, Plaintiff contradicts that allegation by simultaneously alleging that Noom advertises "across the country (including Pennsylvania)", and its app has over 45 million users from 100 countries. *Id.* ¶ 10, 10 n.2. Plaintiff thus concedes that Noom does not target any of its advertising or services specifically to Pennsylvania, but rather that it advertises in the same way worldwide.

**Session Replay Software.** Plaintiff alleges that Noom placed on its Website snippets of computer code from third-party session replay providers like FullStory ("Session Replay Code"). These codes allegedly "obtain certain information about her device, browser, and create a unique ID and profile for her" when she (or other visitors) interacted with webpages on www.noom.com. *Id.* ¶¶ 1, 59. Plaintiff states that during a visit to Noom's Website, she "browsed for different products for sale and signed up for a trial membership," and in doing so, "communicated with [the Website] by using her mouse to hover and click on certain products and services and typing her personal information in text fields." *Id.* ¶ 57. Plaintiff alleges that such communications were "instantaneously captured" by the Session Replay Code and sent to FullStory. *Id.* ¶¶ 46, 59, 61.

Given Plaintiff's counsel's rush to file numerous copy-and-paste pleadings, it is unsurprising that the FAC contains almost no details about Noom's implementation of FullStory's session replay technology ("FullStory Script") on its Website. Indeed, the FAC relies on articles

and reports to provide a generic explanation of both session replay technology and the FullStory Script. Plaintiff alleges, for example, that session replay technology can allow "a website to capture and record nearly every action a website visitor takes while visiting the website." *Id.* ¶¶ 23-24; *see id.* ¶¶ 26-36 (describing what "most" or "some" Session Replay Codes "may" do); *id.* ¶¶ 49-51. But, even Plaintiff's amended descriptions of what the software ***can*** do are wholly untethered to the claims in this lawsuit and instead merely mimic the generic allegations in plaintiff's counsel's 13 other cases. Plaintiff's failure to link the allegations derived from cited publications specifically to Noom's implementation of FullStory Script is telling, as she concedes that "[t]he types of events captured by Session Replay Code vary by specific product and configuration." *Id.* ¶ 26; *see also id.* ¶ 31 (indicating Session Replay Code may or may not anonymize user sessions).

In a similar vein, Plaintiff alleges that she provided her personal information and "certain answers" relating to her weight loss goals, age, gender, height, lifestyle, marital status, and health conditions. *Id.* ¶¶ 57-58. But once again, Plaintiff fails to specifically allege whether Noom's implementation of FullStory Script on its website would have recorded such personal information, much less whether the content would have been linked to her identity.

**Noom's Disclosures of Session Replay Software.** Plaintiff concedes that Noom's Privacy Policy ("Privacy Policy") and Terms and Conditions of Use ("Terms") are available on the homepage of www.noom.com. *Id.* ¶ 74. Plaintiff also admits she "signed up for a trial membership." *Id.* ¶ 57. Since at least as early as December 22, 2020, any individual signing up for a trial membership through Noom's website was required to click to agree to the Privacy Policy and Terms. *See* Declaration of B. Zajaczkowski ("BZ Decl.") at ¶¶ 4-5. And the Privacy Policy in place during the relevant time period, among other things, disclosed (*see* BZ Decl., Ex. B at 7):

> **Embedded Scripts**. An embedded script is programming code that is designed to collect information about User's interactions with the Website, Mobile App and Services, such as the links User clicks on. The code is temporarily downloaded onto User's Device from Noom's web server and/or Mobile App or a third party service

> provider, is active only while User is connected to the Website and/or Mobile App, and is deactivated or deleted thereafter.

## III. LEGAL STANDARD

Plaintiff bears the burden of establishing personal jurisdiction under Rule 12(b)(2). *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). Where the Court is sitting in diversity, the Court applies the law of the forum state—Pennsylvania. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Rule 8(a) requires Plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give Noom fair notice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). Pursuant to Rule 12(b)(6), the Court should dismiss a complaint where it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not" survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

## IV. THE COURT LACKS PERSONAL JURISDICTION OVER NOOM

Personal jurisdiction can be either general (all-purpose) or specific (case-specific or claim-linked). *Danziger*, 948 F.3d at 129. Plaintiff's allegations here do not come close to establishing general jurisdiction, as the company is incorporated and headquartered outside Pennsylvania. *See* FAC ¶ 6; *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 n.19 (2014). Specific jurisdiction over a nonresident defendant is only available if plaintiff establishes "with reasonable particularity," *inter alia*, that (1) defendant "purposefully directed its activities at the forum" [and] (2) plaintiff's claims "arise out of or relate to the defendant's activities." *Danziger*, 948 F.3d at 130. Plaintiff's FAC fails to plead facts establishing these two elements.

### A. Plaintiff Fails to Plead Purposeful Availment

In assessing this factor in the context of websites, the Third Circuit holds that "the propriety of exercising jurisdiction depends on where on a sliding scale of commercial interactivity the web site falls." *Toys "R" Us, Inc. v. Step Two*, 318 F.3d 446, 452 (3d Cir. 2003). "[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Toys*, 318 F.3d at 452. Indeed, "there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id.*; *see M.H. v. Omegle.com*, 2021 WL 1050234, at *4 (D.N.J. Mar. 19, 2021) ("websites providing [online learning] platforms … do not evince purposeful direction because they are not tailored to any forum").

Plaintiff's amended allegations still fall far short of these standards. She alleges in a conclusory fashion that Noom "market[s] and sell[s] its services in Pennsylvania," "targeted its good and services to Pennsylvania citizens[,]" and that "Noom spends millions of dollars on advertising across the country (including Pennsylvania)." FAC ¶¶ 8, 10. But general efforts "to exploit a national market [that] necessarily included Pennsylvania as a target" do not amount to ***purposeful availment of Pennsylvania*** that would justify exercise of specific jurisdiction here. *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009). The analysis, moreover, does not change because Plaintiff alleges that she signed up for a trial membership after browsing Noom's Website. FAC ¶ 57. That is a far cry from alleging that "the website targeted forum residents in any way." *M.H.*, 2021 WL 1050234, at *4 ("if we attach too much significance to the fact of interactivity, then most websites would open a defendant up to jurisdiction anywhere in the world"). Plaintiff's "interactions with [Noom] do not, standing alone, constitute purposeful availment." *Hadnagy v. Moss*, 2023 WL 114689, at *13 (E.D. Pa. Jan. 5, 2023).

### B. Plaintiff Fails to Plead That Her Claims Arise Out of or Relate to Noom's Activities in Pennsylvania

Courts apply the "effects" test provided in *Calder v. Jones*, 465 U.S. 783 (1984), to determine whether tort claims like Plaintiff's "arise out of or relate to" Noom's contact with the forum. *Danziger*, 948 F.3d at 130. Under the *Calder* test, Plaintiff must plead, *inter alia*, that Noom "expressly aimed" its conduct at Pennsylvania. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). To do so, Plaintiff must (i) "point to ***specific activity***" indicating that Noom "expressly aimed" its conduct at Pennsylvania and (ii) show that Noom "***knew*** that [Plaintiff] would suffer the brunt of the harm" in Pennsylvania. *Id.* at 266[5]. Plaintiff meets neither element.

***First***, Plaintiff does not allege that Noom expressly aimed its conduct at Pennsylvania. Where a website "makes itself available to anyone who seeks it out, regardless of where they live … the mere fact that the website is accessible in a given state does not mean that [defendant] is targeting its activities at that state." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 141 (4th Cir. 2020); *see also Motus, LLC v. CarData Consultants Inc.*, 520 F. Supp. 3d 87, 91 (D. Mass. 2021) (a website available "to anyone with internet access" does not specifically target a particular state); *Voltaix, LLC v. NanoVoltaix, Inc.*, 2009 WL 3230887, at *3 (D.N.J. Oct. 1, 2009) (similar).

*Hadnagy* is instructive. There, plaintiffs argued that defendants "expressly aim[ed] their tortious conduct" at Pennsylvania by publishing an allegedly defamatory report on their website, which was "accessible and widely disseminated, including throughout Pennsylvania." *Hadnagy*, 2023 WL 114689 at *6-*7. The court held that plaintiffs failed to point to "specific tortious activity expressly aimed at Pennsylvania," because there were no facts to support that the alleged tort (i.e., publication of the report) was "***specifically circulated or concentrated*** in Pennsylvania." *Id.* at *7. It therefore concluded there was no personal jurisdiction over defendants. *Id.*

[5] All emphases added unless specified otherwise.

Similarly here, Plaintiff alleges that Noom "targeted" and "directed" its allegedly tortious conduct towards Pennsylvania by operating a website available on the Internet that "collect[s] real-time data from website visit sessions initiated by Pennsylvanians while located in Pennsylvania." FAC ¶ 8. But like the report in *Hadnagy*, Noom's Website is accessible "throughout the United States and abroad," *id.*, and Plaintiff fails to allege that Noom engaged in any Pennsylvania-specific activities.[6] As such, the mere fact that Plaintiff was physically present in Pennsylvania when she visited Noom's website (FAC ¶¶ 8-9) is insufficient. Any other conclusion would subject defendants with a nationwide website to "personal jurisdiction in the United States," which would "eviscerate the limits on personal jurisdiction over out-of-state defendants." *Media3 Techs., LLC v. CableSouth Media III, LLC*, 17 F. Supp. 3d 107, 112 (D. Mass. 2014).

***Second***, Plaintiff also does not plead that Noom "knew" that Plaintiff "would suffer the brunt of the harm" in Pennsylvania (indeed, the FAC fails to allege any concrete harm at all). *IMO*, 155 F.3d at 266. A website that is "accessible worldwide" provides no basis to conclude that a defendant "kn[ew] that harm [to plaintiff] was likely to be caused" in a particular forum. *Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001); *see Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *3 (E.D. Cal. May 26, 2021) (holding that defendant's "operation of an internationally accessible website" that used session replay software is, without more, "insufficient to serve as a ground for personal jurisdiction"); Ex. 1 at 2, 11-13 (*Licea v. Caraway Home Inc.*, No. 5:22-cv-017971-JGB-SHKx, ECF No. 20 (C.D. Cal. Feb. 9, 2023)) (dismissing lawsuit alleging that plaintiff's communications with defendant's website were recorded where FAC lacked "necessary factual allegations" to show "if, or how, [defendant] aimed any of its business at California").

Here, the FAC fails to show that Noom knew the harm to Plaintiff "was likely to be caused"

[6] Plaintiff further admits that Noom's advertising campaign is conducted "across the country (including Pennsylvania)" (FAC ¶ 10), but it is not "specifically circulated or concentrated in Pennsylvania." *Hadnagy*, 2023 WL 114689 at *7. This too is insufficient to confer jurisdiction.

in Pennsylvania. *Remick*, 238 F.3d at 259. Plaintiff's amended allegations point to the opposite conclusion: Noom's website is "accessible worldwide," *id.* at 259, and as Plaintiff admits, Noom's app has 45 million users across 100 countries, FAC ¶ 10 n.2. Even if Noom was aware that Pennsylvania residents may visit its website and data would be collected from them (FAC ¶¶ 8-9), "the foreseeability of harm being suffered in a forum is insufficient to establish personal jurisdiction under *Calder*." *LaSala v. Marfin Popular Bank*, 410 F. App'x 474, 477 (3d Cir. 2011); *see AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020). Plaintiff fails to satisfy the third prong of the *Calder* test, and the FAC should be dismissed on this basis alone.

## V. Plaintiff's FAC Fails Under Rule 8(a)

Plaintiff's allegations supporting its claims are devoid of any actual details specific to Noom that would give Noom fair notice of Plaintiff's asserted "entitle[ment] to relief." *Twombly*, 550 U.S. at 545. Despite amending her complaint, Plaintiff fails to plead with any specificity, *inter alia*, how FullStory Script was implemented on Noom's website or whether FullStory Script captured the personal information she allegedly provided on Noom's website. Plaintiff also seeks injunctive relief, *see* FAC ¶¶ 103, 117, but never states whether she has ever used Noom after her trial membership expired or whether she intends to ever use Noom's services again. Plaintiff claims she "fell victim" to Noom's "unlawful monitoring," but does not specify when she visited Noom's website, only vaguely alleging that it was sometime "prior to filing this action." *Id.* ¶¶ 54-55. Accordingly, Plaintiff's FAC fails under Rule 8(a) and should be dismissed. *See Liggon-Redding v. Souser*, 352 F. App'x 618, 619–20 (3d Cir. 2009) (dismissing complaint that "fails to state a claim showing [plaintiff] is entitled to relief" under Rule 8(a)).

## VI. The Court Should Dismiss The FAC Under Rule 12(b)(6)

### A. Plaintiff Fails to State a Claim under WESCA

Under WESCA, Plaintiff must allege that Noom "intentionally intercept[ed]" an electronic

communication, and there is no liability where all parties have consented. 18 Pa. C.S. §§ 5703, 5725(a); 5704(4). *Id.* § 5704(4). The FAC here fails to state a claim under WESCA.

**1. Plaintiff Does Not Plead Interception**

To state a claim under WESCA, Plaintiff must plausibly allege that the "contents" of any communication between herself and Noom were intercepted through the use of a "device." *Id.* § 5702 ("Aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device."). Plaintiff fails to plead either.

**a. *Plaintiff Fails to Allege the Use of Any Device***

WESCA defines a "device" as "[a]ny device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that ***can be used to intercept a wire, electronic or oral communication*** other than" certain equipment specified in the statute. 18 Pa. C.S. § 5702. Contrary to Plaintiff's allegations (FAC ¶¶ 66-69, 93), the statute's plain language and longstanding precedent make clear that software code on Noom's website is not a "device" within the meaning of the statute.

***First***, while the FAC strains to characterize session replay software as a "device," such an interpretation would violate the canons of statutory interpretation. Under Pennsylvania law, courts "should not disregard the language of the law in the context of pursuing its spirit." *Commonwealth v. Kelley*, 569 Pa. 179, 184 (2002). Interpretation of statutes should be according to definitions "acquired through their common and approved usage." *Commonwealth v. Hart*, 611 Pa. 531, 547 (2011). In so doing, Pennsylvania courts routinely refer to dictionary definitions. *Id.* at 549 ("common and approved" definitions may be "ascertained by examining its dictionary definition").

Applying these principles here, the "plain and ordinary meaning" of "device" must be something more than software code alone. *Commonwealth v. Hogue*, 2019 WL 3545843, at *4 n.8 (Pa. Super. Ct. Aug. 5, 2019). Black's Law Dictionary (11th ed. 2019) defines "device" as a

"mechanical invention" that may be "an apparatus or an article of manufacture" and refers to the definition of "machine." The non-legal dictionary definition of this term similarly indicates that "device" refers to tangible objects. *See, e.g.*, The American Heritage Dictionary of the English Language, *Device*, https://www.ahdictionary.com/word/search.html?q=Device (last visited Feb. 16, 2023) ("An object designed and manufactured to perform one or more functions."). Software code on a website is not something tangible like a "mechanical invention" or "machine."

Consistent with these definitions, no Pennsylvania court has extended the meaning of "device" under WESCA to encompass intangible things like software code. To the contrary, Pennsylvania courts have interpreted "device" in other contexts to mean a tangible object, like a computer tablet or smartphone. *See Commonwealth v. Diego*, 119 A.3d 370, 376 (Pa. Super. 2015) (computer tablet); *Commonwealth v. Smith*, 136 A.3d 170, 178 (Pa. Super. 2016) (smartphone). Moreover, the examples the state legislature included within the statutory definition—an "induction coil" and "telecommunication identification interception device"—make clear that a "device" is tangible. 18 Pa. C.S. § 5702. And the exemplar exceptions to the definition of "device" also are tangible: "equipment," "hearing aid," "instrument," and "facility." *Id.* As such, the meaning of "device" under WESCA does not extend to Session Replay Code on Noom's website.[7]

***Second***, analogous precedents involving the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523 (the "Wiretap Act") also establish that software code is simply not a "device." WESCA was expressly modeled after the Wiretap Act, and the Third Circuit has held that the two laws should be "interpreted in the same way." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 n.6 (3d Cir. 2003), *as amended* (Jan. 20, 2004). Numerous courts across the country have held that software is not a "device" under the Wiretap Act or state wiretap laws

[7] Any ambiguity here should also be resolved in Noom's favor under the rule of lenity. *See Hartford Steam Boiler Inspection v. Int'l Glass Prods., LLC*, 2016 WL 5468111, at *16 (W.D. Pa. Sep. 29, 2016) (applying rule of lenity to civil application of Pennsylvania criminal statute).

modeled after the federal law[8]. For example, the court in *Potter v. Havlicek*, 2008 WL 2556723 (S.D. Ohio June 23, 2008), held that software was not a device under the Wiretap Act because it "alone cannot be used to intercept communications," but rather had to "be installed in a device, such as a computer." *Id.* at *8. In addition, the *Potter* court and others found that the plain meaning of "the word 'device' does not encompass software" given that the dictionary definitions described a "device" as "a piece of equipment or a mechanism." *Id.*; *see, e.g.*, *Cardoso v. Whirlpool Corp.*, 2021 WL 2820822 at *2 (S.D. Fla. July 6, 2021) (dismissing Florida wiretap claim because session replay software is not a "device"); *Connor v. Whirlpool Corp.*, 2021 WL 3076477, at *2 (S.D. Fla. July 6, 2021) (same); *Ideal Aerosmith v. Acutronic USA*, 2007 WL 4394447, at *5 (E.D. Pa. Dec. 13, 2007) (e-mail drive or server is not a "device" under Wiretap Act); *United States v. Ackies*, 918 F.3d 190, 199 n.5 (1st Cir. 2019) (software is not a "device" under Federal Stored Communications Act).

Similarly here, the FAC admits that FullStory's Session Replay Code cannot intercept any communications on its own, but rather must be "embed[ded]" onto a website and be further "deploy[ed] on each website visitor's internet browser" before it can allegedly begin "intercepting and recording the website visitor's electronic communications." FAC ¶ 1; *see id.* ¶¶ 23-25. This does not refer to a tangible object or machine and as such, does not qualify as a "device." *See Potter*, 2008 WL 2556723, at *8. Likewise, Plaintiff fares no better with her argument that Session Replay Code is a "device" simply because it "monitors, collects, and records the content of electronic computer-to-computer communications." FAC ¶ 66. Here, Plaintiff concedes that Session Replay Code operates by "instructing the hardware components of [a] physical device to run the processes that ultimately intercept the visitor's communications." *Id.* ¶ 67. Because Session

[8] The Wiretap Act defines "device" as "any device or apparatus which can be used to intercept" an electronic communication other than certain equipment. *See* 18 U.S.C. § 2510.

Replay Code is software that exists independent of the hardware components it instructs, it cannot be a "device" under WESCA. Indeed, Plaintiff admits that Session Replay Code "alone cannot be used to intercept communications," *Potter*, 2008 WL 2556723, at *8, but rather must be used with "the hardware components of [a] physical device" in order to intercept any communications. FAC ¶ 67. As such, the plain meaning of "device" as "a piece of equipment or a mechanism" does not encompass software like Session Replay Code. *See Potter*, 2008 WL 2556723, at *8.[9]

**b. *Plaintiff Fails to Allege that Noom Acquired the Contents of Her Website Communications***

Plaintiff's WESCA claim fails for the additional, independent reason that the FAC does not plausibly allege that Noom acquired the "contents" of her communications. As an initial matter, the essence of what Plaintiff alleges is that Noom recorded her activity while she browsed the website. *See* FAC ¶ 49 ("the information that FullStory Script captures can be translated into a simulation video of how a user interacts with a website"); *id.* ¶¶ 48, 57-59. The recording of such activity is not actionable under WESCA, similar to how the act of videotaping a consumer browsing a brick-and-mortar store is not actionable under the Wiretap Act. *Cf. Allen v. Brown*, 320 F. Supp. 3d 16, 38 (D.D.C. 2018) ("[E]very federal appeals or district court to have considered the question has concluded that silent video surveillance is not covered by the [Wiretap Act]."); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021) ("[S]ilent surveillance videos of [plaintiff's] physical movements had no contents … because they did not

[9] Plaintiff's citations in the FAC regarding the meaning of "device" (FAC ¶ 93) are inapposite as they do not consider the definition of "device" under WESCA, much less analyze the term under the canons of statutory interpretation. Rather, these cases focus on addressing other required elements of the Wiretap Act not alleged here, *e.g.*, whether the acquisition of a communication occurred at the same time as its transmission. *See Luis v. Zang*, 833 F.3d 619, 629 (6th Cir. 2016) (software at issue acquired communications contemporaneously with their transmission); *Shefts v. Petrakis*, 2012 WL 4049484, at *9 (C.D. Ill. Sept. 13, 2012) (same); *United States v. Barrington*, 648 F.3d 1178, 1203 (11th Cir. 2011) (keylogger software constituted "device-making equipment" under different statute; noting in dicta that there was no evidence showing that keylogger software could be a "device" that contemporaneously captures information being transmitted).

convey [any] *substance*[.]") (emphasis in original; internal quotations omitted).

Plaintiff fails to state a claim because she either fails to allege that content was intercepted or does not specifically allege that any information she provided to Noom was recorded by Session Replay Code. ***First***, as to the majority of Plaintiff's allegations, she fails to allege any content was intercepted. WESCA defines "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 Pa. C.S. § 5702. This term is defined identically in the Wiretap Act. *Compare* 18 U.S.C. § 2510 *with* 18 Pa. C.S. § 5702. Thus, cases construing this identical term under the Wiretap Act are instructive. *See Fraser*, 352 F.3d at 113 n.6.

In interpreting the Wiretap Act, courts have held that "contents" means "the intended message conveyed by the communication and does not include record information regarding the characteristics of the message." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also United States v. Reed*, 575 F.3d 900 (9th Cir. 2009) (record information include as time, length, and origination of a communication). The term "contents" as used in the Wiretap Act thus does not include "dialing, routing, addressing, or signaling" information, such as "addresses, phone numbers, and URLS … when they are performing such a function." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015).

Applying these principles here, Plaintiff fails to state a claim. Plaintiff describes the type of information that Noom ***may*** have collected—"button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, network requests," "IP addresses and geolocation data," and the like. FAC ¶¶ 48, 50-52. But a plaintiff's online "movements" on a website are not "contents" contemplated by WESCA because they "d[o] not convey the substance of any particular communication." *Accord Goldstein*, 559 F. Supp. 3d at 1321 (holding that mouse movements, clicks, pages visited, and keystrokes, including information input by the plaintiff, were not "contents" under Florida wiretap

law); *cf. Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021) (same under California wiretap law). Nor is "routing, addressing, or signaling" information like addresses and URLs considered "contents" under WESCA. *See In re Google Inc. Cookie*, 806 F.3d at 137.

***Second***, Plaintiff also claims that Session Replay software allegedly captured "certain information about her device," and unspecified "personal information" and mouse clicks she input on Noom's website. FAC ¶¶ 57-59; *see id.* ¶ 26. This is too vague to establish interception of the contents of her communications. *Cf. Goldstein*, 559 F. Supp. 3d at 1322 (dismissing claim where session replay software allegedly captured "information inputted" into a website). And nowhere does Plaintiff allege that the Session Replay Code on Noom's website collects such information in a way that links specific answers to Noom's specific visitors. *See* FAC ¶ 31 (indicating that Session Replay Code can anonymize user sessions). Plaintiff's conclusory allegation that "any operational iteration of the Session Replay Code will, by its very nature and purpose, intercept the contents of [her] communications" does not save her claim. *Id.* ¶ 64.

These pleading flaws are exacerbated by Plaintiff's concession that the "types of events captured by Session Replay Code vary by specific product and configuration," *id.* ¶ 26, and that "Noom masks certain elements when it configures the settings of the Session Replay Code embedded on its website." *Id.* ¶ 64. Plaintiff fails to explain what kind of content is masked on Noom's Website and what that "masking" means in this context. *Id*. Does masking information prevent it from being transmitted to a third party? Plaintiff's original complaint did not say, nor do the allegations added to the FAC. Plaintiff then claims that despite this masking, certain "substantive" information is allegedly transmitted to FullStory, including "which pages a user navigates to" and "how the user moves through the page," (*id.* ¶ 65) but those two pieces of information are merely record information of the website address of the pages viewed and where the cursor moved on a page, not "contents" protected by WESCA. *In re Google Inc. Cookie*

*Placement Consumer Priv. Litig.*, 806 F.3d at 137 (address information, such as "URLs" of visited webpages, are not content). Plaintiff has, in short, failed to plead that the "contents" of any communication were allegedly intercepted here, and her WESCA claim fails.

**2. Plaintiff Consented to the Alleged Data Collection**

As the Third Circuit noted, "if someone consents to the interception of her communications with a website, [WESCA] does not impose liability." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022); *see* 18 Pa. C.S. § 5704(4). Consent under Pennsylvania law can be demonstrated when the person being recorded "knew, ***or should have known***, that the conversation was recorded." *Popa*, 52 F.4th at 129 (quoting *Commonwealth v. Byrd*, 661 Pa. 85, 98 (2020)). "This standard is one of a reasonable person." *Byrd*, 661 Pa. at 98. Indeed, consent does not require "actual knowledge." *Id.* Here, Plaintiff has consented to the alleged conduct.

To begin, Plaintiff should have known that her interactions with Noom's website could be collected and analyzed. Pennsylvania courts have noted that "[a]ny reasonably intelligent person, savvy enough to be using the Internet … would be aware of the fact that messages are received in a recorded format." *Commonwealth v. Proetto*, 771 A.2d 823, 829 (2001), *aff'd,* 575 Pa. 511 (2003); *see Diego*, 119 A.3d at 376 (a reasonable person's knowledge that she is being recorded may be "surmised from the very nature of the selected means of transmission"). As the Third Circuit acknowledged, "[m]ost of us understand that what we do on the Internet is not completely private," and "recognize, even if only intuitively, that our data … feed[s] an entire system of trackers, cookies, and algorithms designed to capture and monetize the information we generate." *In re Nickelodeon*, 827 F.3d 262, 266 (3d Cir. 2016). Thus, upon applying the "reasonable person" standard, by "the very act of sending a communication over the Internet," Plaintiff should have known that she was "expressly consent[ing] to the recording" of her Website communications. *Proetto*, 771 A.2d at 829; *see Byrd*, 661 Pa. at 98; *State v. Townsend*, 57 P.3d 255, 260 (2002)

(finding defendant implicitly consented to recording of emails, which are sent with "expectation that … [they] first must be recorded on another computer's memory" to be read or printed).

In addition, Plaintiff also consented to the collection of her data on Noom's website by her conduct. In *Byrd*, the Pennsylvania Supreme Court held that a prisoner "consent[ed] by conduct" when he spoke with a visitor by telephone after receiving a warning message that his communication "may be monitored or recorded." *Byrd*, 661 Pa. at 99. The court found that the prisoner consented even though he "may not have heard" the warning, because a "reasonably intelligent person" would have known that he is being recorded. *Id.* at 97; *see U.S. v. Amen*, 831 F.2d 373, 378 (2d Cir. 1987) (implying "consent in fact from surrounding circumstances").

Here, when Plaintiff visited Noom's Website, the link to Noom's Privacy Policy was underlined and conspicuously available on Noom's Website. *See* FAC ¶ 74; *cf. James v. Glob. TelLink Corp*, 852 F.3d 262, 267 (3d Cir. 2017) (noting that a browsewrap agreement's enforceability "turn[s] on whether the terms or a hyperlink to the terms are reasonably conspicuous on the webpage"). Noom's Privacy Policy put Plaintiff on notice that her interactions with the Website may be "monitored or recorded." *Byrd*, 661 Pa. at 99. A reasonable person visiting Noom's Website who continued browsing the site and completed the sign-up process for a trial membership with Noom, as the Plaintiff did here (FAC ¶ 57), "consent[ed] by conduct" to Noom's collection of her online communications with the Noom Website. *Byrd*, 661 Pa. at 99.

Lastly, Plaintiff expressly agreed to Noom's Privacy Policy and Terms when she signed up for her trial membership. *See* BZ Decl. ¶¶ 4-5. Those agreements clearly informed visitors to the Website that their data may be collected, used, and/or shared. The Privacy Policy states, *inter alia*, that Noom "may use various methods and technologies to store or collect" the personal information of its Website visitors, including via the use of "embedded script[s]" "designed to collect information about User's interactions with the Website," and specifies that "Noom's third-party

service providers may use a variety of technologies that automatically (or passively) store or collect certain information whenever User visits or interacts with the Website." BZ Decl., Ex. B at 5-7.[10] The Terms further required Plaintiff to (1) "acknowledge and agree" that "a Third-Party Service Provider may collect and use certain information about [her], which may include personal information" and (2) grant Noom "[a] non-exclusive right … to use, license, reproduce, … transmit … and otherwise use any User Content." *Id.*, Ex. A at 19, 32. This alone establishes consent.

**B. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion.**

To establish an intrusion upon seclusion, Plaintiff must prove there was (1) an intentional intrusion, (2) upon the solitude or seclusion of another, (3) in a manner that would be highly offensive to a reasonable person. *See* Restatement (Second) of Torts § 652B (1977); *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 260 (3d Cir. 2004). Plaintiff fails to plead each of these elements.

**1. Plaintiff Does Not Plead an Intentional Intrusion**

"[A]n actor commits an ***intentional*** intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989) (emphasis in original). Plaintiff cannot allege that Noom believed it lacked the legal permission to embed Session Replay Code on its Website. Such technology has not been barred in any jurisdiction. To the contrary, courts have repeatedly dismissed similar claims under other state's wiretapping laws, including a similar challenge to Noom's use of FullStory Script under California's wiretapping law. *See, e.g.*, *Graham*, 533 F. Supp. 3d at 838; *Goldstein*, 559 F. Supp. 3d at 1322; *Yale*, 2021 WL 1428400, at *3. As even Plaintiff admits, this technology is "utilized by websites for some legitimate purposes." FAC ¶ 24.

Plaintiff's failure to plead intent is unsurprising, since Noom's Privacy Policy, to which

[10] The Privacy Policy also states that "Noom may use cookies or other Tracking Technologies that Noom considers is strictly necessary to allow User to use and access Noom's Website" "including cookies required for system administration, to prevent fraudulent activity." BZ Decl., Ex. B at 8.

Plaintiff agreed, plainly discloses the purportedly unlawful conduct. *See id.* ¶ 73. As discussed above, the policy explains in detail the nature of the information Noom collects from website users, including via third parties. *See supra* Section VI.A.2. The Privacy Policy—made conspicuous on Noom's Website through an underlined hyperlink (FAC ¶ 74), *see James*, 852 F.3d at 267, and agreed-to by anyone who, like Plaintiff, signed up for a trial membership—establishes that Noom lacked the requisite intent regarding the legal permission to commit the alleged data collection.

**2. Plaintiff Fails to Allege A Reasonable Expectation of Privacy Over Her Actions on Noom's Website**

To plead this element, Plaintiff must allege a reasonable expectation of privacy in the place intruded on. *See Kline v. Sec. Guards Inc.*, 386 F.3d 246, 260 (3d Cir. 2004). Plaintiff cannot expect information she "voluntarily turn[ed] over to third parties," including websites, to support an intrusion claim, especially when a party "is forewarned of [its] possible disclosure." *United States v. Bowers*, 2021 WL 2882438, at *3 (W.D. Pa. July 8, 2021); *see Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1025 (N.D. Cal. 2012) (no serious privacy interest in browsing history of clicked-on profiles). Thus, to the extent Plaintiff alleges that the Session Replay Code captured Plaintiff's "personal information" (FAC ¶¶ 57-59), such information was voluntarily provided to Noom, and she cannot claim an intrusion claim on that information. *See Smith v. Maryland*, 442 U.S. 735, 743-44 (1979). Finally, Noom's Privacy Policy, which is conspicuously available on Noom's website and to which Plaintiff expressly assented to as part of her trial membership (FAC ¶ 57), also forewarned Plaintiff that her actions on the site were subject to monitoring by Noom and its third-party partners. *See supra* Section VI.A.2. Given the above, Plaintiff cannot establish a legally protected privacy interest in her actions on Noom's Website, and her claim must fail.

**3. The Alleged Conduct is not Highly Offensive to the Reasonable Person**

This Court has held that "the type of conduct that may be considered sufficiently offensive" as to give rise to an intrusion upon seclusion claim must be "***of the sort which would cause mental***

***suffering, shame or humiliation to a person of ordinary sensibilities***." *Popa*, 426 F. Supp. 3d at 122 (emphasis in original). This is a high bar, which Plaintiff fails to meet.

Pennsylvania courts make clear the intrusion must involve highly sensitive information. In *Chicarella v. Passant*, for instance, the court denied an intrusion claim against a private investigator who obtained the plaintiff's private medical records, including his medical history and diagnoses for certain diseases and conditions, and supplied them to the plaintiff's opponent in a lawsuit. 343 Pa. Super. 330, 335, 339-40 (1985). The court found that the "brief descriptions of appellant's medical treatment cannot be deemed a substantial intrusion" that would cause "mental suffering, shame or humiliation." *Id.* at 339. In *Nagy v. Bell Telephone Co. of PA*, a plaintiff who was harboring a spouse from her abusive husband asked the telephone company to keep secret call records. 292 Pa. Super. 24 (1981). The husband persuaded the company to give him the records, and the court denied plaintiff's subsequent intrusion claim against the company. *Id.* at 30-31.

Here, Noom's alleged conduct is nowhere near as "offensive" as the conduct in *Chicarella* and *Nagy*, in which both the intrusion claims failed. Plaintiff does not allege that any information she purportedly provided to Noom (FAC ¶ 58) is highly sensitive information, and like the medical treatment records in *Chicarella* or records that posed a threat to a family's physical safety in *Nagy*, it cannot be "deemed a substantial intrusion." *Chicarella*, 343 Pa. Super. at 339. Nor does Plaintiff even attempt to allege that Noom's collection of her information caused "mental suffering, shame or humiliation." *Popa*, 426 F. Supp. 3d at 122. Indeed, as this Court held, "the act of collecting … keystrokes, mouse clicks, and [personal identifiable information] is simply not the type of highly offensive act to which liability can attach." *Id.* The Court should thus dismiss the intrusion claim.

## VII. CONCLUSION

For the foregoing reasons, Noom respectfully requests that the Court enter an order dismissing Plaintiff's FAC in its entirety, with prejudice.

Dated: May 1, 2023

Respectfully submitted,

*/s/ Kyle C. Wong*

Kyle C. Wong*
kwong@cooley.com
Aarti Reddy*
areddy@cooley.com
Sharon Song*
ssong@cooley.com
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: 415-693-2000
*Admitted *Pro Hac Vice*

Maria Greco Danaher
PA I.D. No. 47036
Email: maria.danaher@ogletree.com
**OGLETREE DEAKINS**
One PPG Place, Suite 1900
Pittsburgh, PA 15222
Telephone: 412-394-3390

*Counsel for Defendant*
Noom, Inc.

285467071