**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ARIEL OLIVER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NOOM, INC.,<br><br>Defendant. | Case No. 2:22-cv-1857-WSS |

**PLAINTIFF'S OPPOSITION TO DEFENDANT**
**NOOM, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS


Introduction ..... 1

Factual Background ..... 1

Legal Standard ..... 3

I. Legal Standard for a 12(b)(2) Motion. ..... 3

II. Legal Standard for a Rule 12(b)(6) Motion. ..... 3

Argument ..... 4

I. This Court Has (Specific) Personal Jurisdiction Over Noom. ..... 4

A. Under the *Calder* "Effects Test," Noom is Subject to Personal Jurisdiction Here ..... 5

B. Under the "Traditional Test," Noom Is Subject to Personal Jurisdiction Here. ..... 8

II. Noom's Generic Arguments Regarding Rule 8 Are Not Grounds for Dismissal ..... 9

III. Plaintiff Sufficiently Pleaded a Violation of WESCA. ..... 10

A. Software Is a "Device" ..... 10

B. Noom Procured the Interception of, and Disclosed "Contents" of Plaintiff's Electronic Communications. ..... 12

IV. Plaintiff Did Not Consent to the Interception of Her Electronic Communications. ..... 14

V. Plaintiff Sufficiently Pleaded an Intrusion Upon Seclusion. ..... 17

Conclusion ..... 19

**TABLE OF AUTHORITIES**

**Cases** **Pages**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 9

*Bergstein v. Parmar*,
2014 WL 12586073 (C.D. Cal. June 23, 2014) ........ 6

*Byars v. The Goodyear Tire and Rubber Co.*,
2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) ........ 13, 18

*Byrd v. Aaron's, Inc.*,
2012 WL 12887775 (W.D. Pa. Feb. 17, 2012) ........ 11

*Calder v. Jones*,
465 U.S. 783 (1984) ........ 5

*Com. v. Byrd*,
235 A.3d 311 (Pa. 2020) ........ 14

*Com. v. Cruttenden*,
58 A.3d 95 (Pa. 2012) ........ 15

*Com. v. Proetto*,
771 A.2d 823 (2001) ........ 15

*Com. v. Spangler*,
809 A.2d 234 (Pa. 2002) ........ 10

*Del Valle v. Trivago GMBH*,
56 F.4th 1265 (11th Cir. 2022) ........ 5

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021) ........ 8

*Harris by Harris v. Easton Pub. Co.*,
483 A.2d 1377 (Pa. Super. Ct. 1984) ........ 17

*Hines v. Overstock.com, Inc.*,
668 F. Supp. 2d 362 (E.D.N.Y. 2009) ........ 17

*Hussein v. Coinabul, LLC*,
2014 WL 7261240 (N.D. Ill. Dec. 19, 2014) ........ 16

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998) ........ 6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..... 18

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ..... 12, 13, 18

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ..... 17, 18

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) ..... 14

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..... 14

*James v. Glob. TelLink Corp*,
852 F.3d 262 (3d Cir. 2017) ..... 15, 16

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ..... 14

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) ..... 8, 9

*Makkinje v. Extra Space Storage, Inc.*,
2022 WL 80437 (M.D. Fla. Jan. 7, 2022) ..... 11

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ..... 7

*McDaid v. Avant, LLC*,
2021 WL 9803613 (W.D. Pa. Oct. 26, 2021) ..... 16

*Mellon Bank (East) PSFS, Nat'l Ass'n v. Farin*,
960 F.2d 1211 (3d Cir. 1992) ..... 4

*Menkes v. Prudential Ins. Co. of Am.*,
762 F.3d 285 (3d Cir. 2014) ..... 3, 4

*Miller Yacht Sales, Inc. v. Smith*,
384 F.3d 93 (3d Cir. 2004) ..... 3, 5

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ..... 16

O*'Connor v. Sandy Lane Hotel Co.,*
*4*96 F.3d 3126 (3d Cir. 2007) ..... 5, 8

*O'Donnell v. U.S.*,
891 F.2d 1079 (3d. Cir. 1989) ........ 17

*Patterson v. F.B.I.*,
893 F.2d 595 (3d Cir. 1990) ........ 3

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
967 F.3d 218 (3d Cir. 2020) ........ 4

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ........ 7

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019) ........ 10, 11, 13, 19

*PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co.*,
2020 WL 1526940 (W.D. Pa. Mar. 31, 2020) ........ 8

*Remick v. Manfredy*,
238 F.3d 248 (3d Cir. 2001) ........ 5

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 13

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) ........ 5, 6

*UMG Recordings, Inc. v. Kurbanov*,
963 F.3d 344 (4th Cir. 2020) ........ 7

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019) ........ 11, 12

*Vizant Techs., LLC v. Whitchurch*,
97 F. Supp. 3d 618 (E.D. Pa. 2015) ........ 8

*Wolfson v. Lewis*,
924 F. Supp. 1413 (E.D. Pa. 1996) ........ 17

**<u>Statutes</u>**

1 Pa. C.S.A. § 1922 ........ 15

18 Pa. C.S.A. §§ 5701 ........ 1

18 Pa. C.S.A. § 5702 ........ 10, 11, 12

42 Pa. C.S.A. § 5322(b) ........ 4

**Rules**

Fed. R. Civ. P. 8 ..... 9, 10

Fed. R. Civ. P. 4(k)(1)(A) ..... 4

Fed. R. Civ. P. 12(b)(6) ..... 3

**Other Authorities**

Restatement (Second) of Torts § 652B ..... 17

## INTRODUCTION

Plaintiff Ariel Oliver ("Plaintiff") brought this class action against Defendant Noom, Inc., ("Defendant or "Noom") for its intentional procurement of hidden computer code to wiretap website visitors' communications with www.noom.com. Through a hidden computer software code that Noom intentionally procures from third parties and embeds on its website, every mouse movement, click, scroll, keystroke, and other electronic communication of visitors to www.noom.com is surreptitiously intercepted, recorded, and instantaneously disclosed to the third-party providers of the hidden computer code. The intercepted electronic communications can then be used to recreate and replay a website visitor's entire visit to www.noom.com.

As detailed in the First Amended Complaint,[1] Noom intentionally directed its tortious conduct towards the Commonwealth of Pennsylvania and citizens thereof, subjecting itself to the personal jurisdiction of this Court. Further, Plaintiff's factual allegations demonstrate that Noom's conduct amounts to the electronic equivalent of looking over the shoulder of each visitor to its website for the entire duration of their website visit, without their consent. Plaintiff therefore states claims that Noom violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. §§ 5701, *et seq.* ("WESCA"), and committed the common law tort of intrusion upon seclusion. For the reasons explained herein, Plaintiff respectfully requests that this Court deny Noom's motion to dismiss in its entirety.

## FACTUAL BACKGROUND

Noom operates the website www.noom.com. FAC ¶ 43. Noom markets itself as a digital health and wellness platform for individuals to lose weight and lead healthier lives. FAC ¶ 43. Noom's website is the focal point of its business model, enabling individuals to sign up for

[1] First Amended Complaint (ECF No. 15), referred herein as "FAC" or "Complaint."

Defendant's subscription-based service. FAC ¶¶ 43–44. The first step in signing up for Noom's service is the completion of a 10-minute online quiz, during which website visitors "provide Noom with information about their height, weight, gender, age, why they want to lose weight, how active they are, how often they eat, and whether they are at risk for certain health issues." FAC ¶ 44.

Plaintiff is a Pennsylvania citizen. FAC ¶ 5. While on her computer in Pennsylvania, Plaintiff visited Noom's website at www.noom.com. FAC ¶ 54. During Plaintiff's visit to www.noom.com, Plaintiff took Noom's online quiz, providing Noom with intimate answers to questions about "her gender, age, height, weight, lifestyle, marital status, health conditions, [and] her weight loss goals" and signed up for Defendant's 14-day free trial. FAC ¶¶ 57–58. During her visit, Plaintiff's mouse movements, clicks, keystrokes, URLs of webpages visited, and other electronic communications (collectively, "Website Communications") were surreptitiously and instantaneously intercepted by hidden computer code and sent to third-parties without her knowledge or consent. FAC ¶¶ 1, 59–60. When taking Noom's online quiz, this interception also included Plaintiff's email address which she entered into a form field. FAC ¶ 58. Plaintiff was required to provide her email address in order to receive her quiz results. FAC ¶ 58. Far from being routine, the hidden computer code, in real time, disclosed Plaintiff's Website Communications with Noom's website to third parties who can then use the intercepted electronic communications to recreate a simulation video of Plaintiff's entire visit to www.noom.com. FAC ¶¶ 2, 23–28, 45–53, 56–63.

To effectuate the wiretap, Noom intentionally procures and secretly embeds snippets of JavaScript computer code (the "Session Replay Code") from various providers (the "Session Replay Providers"), including FullStory, onto its website. FAC ¶¶ 1, 45–53. The Session Replay Code embedded on Noom's website permits the Session Replay Providers to intercept website

visitors' Website Communications instantaneously, in real time. FAC ¶¶ 52, 59, 96. Thus, as soon as a visitor arrives on www.noom.com, they are instantaneously wiretapped without their knowledge or consent. FAC ¶¶ 70, 103, 108.

The Session Replay Code procured by Noom enables Session Replay Providers to intercept "each click, tap, URL visit, and every other interaction" including "names, emails, phone numbers, addresses, social security numbers, date of birth, and more." FAC ¶¶ 47, 48. Further, the Session Replay Code "collects website visitors' IP addresses and geolocation data in a visible and searchable format for websites such as Noom." FAC ¶ 50. Indeed, the geolocation data is accurate enough to enable Noom to search the captured information for users by country, state, and city. FAC ¶ 50. Thus, the Session Replay Code "collects highly personal information and substantive communications that can be tied directly to a website user's identity." FAC ¶ 49.

## LEGAL STANDARD

### I. Legal Standard for a 12(b)(2) Motion.

Once a challenge to personal jurisdiction has been raised under Rule 12(b)(2), the plaintiff bears the burden of establishing "jurisdictional facts through sworn affidavits or other competent evidence." *Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (citation omitted). When the district court does not hold an evidentiary hearing as to personal jurisdiction, the plaintiff must "establish a *prima facie* case of personal jurisdiction," and the Court must accept as true all allegations in the complaint. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

### II. Legal Standard for a Rule 12(b)(6) Motion.

"To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must allege enough facts to state a claim to relief that is plausible on its face." *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 289–90 (3d Cir. 2014) (internal citations and quotations omitted). "A complaint has facial plausibility when there is enough factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 290 (internal citations and quotations omitted). In ruling on a motion to dismiss, the court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in the "[nonmoving party]'s favor." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 229 (3d Cir. 2020).

## ARGUMENT

### I. This Court Has (Specific) Personal Jurisdiction Over Noom.

Plaintiff specifically alleges that Noom intentionally procured Session Replay Providers to surreptitiously and knowingly intercept the electronic communications of citizens of Pennsylvania, and intentionally caused the harm complained of in the Complaint inside the borders of Pennsylvania. FAC ¶ 8. Plaintiff further alleges that Noom chose to do business in Pennsylvania by "target[ing] its goods and services to Pennsylvania citizens, and knew that its practices would directly result in collection of information from Pennsylvania citizens while those citizens browse www.noom.com from devices located in Pennsylvania." FAC ¶ 8. Plaintiff also alleges that Noom spends millions of dollars on advertising across the country (including in Pennsylvania). FAC ¶ 10. Noom's successful advertising campaign has resulted in a robust market for its services throughout the U.S. (including Pennsylvania). FAC ¶ 10. Given that Plaintiff was wiretapped while in Pennsylvania signing up for Noom's free trial service offered in Pennsylvania on www.noom.com (FAC ¶¶ 57–59), these well-pleaded allegations facially establish personal jurisdiction over Noom in Pennsylvania.

A district court exercises personal jurisdiction according to the law of the state where it sits; in this case, Pennsylvania. *See* Fed. R. Civ. P. 4(k)(1)(A). The Pennsylvania long-arm statute provides for jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b); *see also Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992). Thus, a court may exercise

personal jurisdiction over a defendant as long as the defendant has "certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotations and citation omitted). Analysis of personal jurisdiction requires a court to "examine the relationship among the [defendant], the forum, and the litigation." *Miller Yacht Sales*, 384 F.3d at 96 (internal quotations and citation omitted).

### A. Under the *Calder* "Effects Test," Noom is Subject to Personal Jurisdiction Here.

For specific jurisdiction in intentional tort cases, the Supreme Court has articulated an "effects test." *See Calder v. Jones*, 465 U.S. 783 (1984). Under the *Calder* effects test, personal jurisdiction is satisfied where: (1) a defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered; and (3) the tortious conduct was expressly aimed at the forum. *See Remick v. Manfredy*, 238 F.3d 248, 260 (3d Cir. 2001). Where all three factors are met, personal jurisdiction will be established. *Id.* A single tortious act is sufficient, without regard to whether the defendant had any other contacts with the forum state. *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1276 (11th Cir. 2022).[2]

Here, Noom only challenges the expressly aiming prong, which requires that "the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254,

[2] Plaintiff's WESCA and intrusion upon seclusion claims are intentional torts to which the "effects test" applies. *See Remick*, 238 F.3d at 258 (finding the first element met where the plaintiff brought a cause of action of defamation—an intentional tort); *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *4 (N.D. Cal. May 15, 2019) ("The 'intentional act' standard is easily satisfied here because S.D. alleges that Hytto purposefully intercepted electronic transmissions from and/or to users in the U.S.").

256 (3d Cir. 1998). As alleged, Noom intentionally targeted its goods and services at Pennsylvania citizens through the use of its interactive website. FAC ¶ 8. While Noom attempts to argue that its over 45 million users worldwide make it impossible to find specific jurisdiction here, the fact that some of those users (such as Plaintiff during her free trial period) are Pennsylvania citizens demonstrates that Noom must have known that Pennsylvania citizens would use its website. Thus, Noom intentionally implemented software on its website that it knew would gather Website Communications of Pennsylvania citizens, while they were located in Pennsylvania. FAC ¶¶ 8, 10.

Indeed, the Session Replay Code Noom embedded on its website "uses IP addresses 'to surface geolocation data' and in turn, '[t]his geolocation data allows users to segment for sessions by country, state, or city.'" FAC ¶¶ 50, 9 ("Noom's website servers are capable of collecting user location data from a user's device such that Noom is continuously made aware that its website is being visited by people located in Pennsylvania, and that such website visitors are being wiretapped in violation Pennsylvania statutory and common law."). As such, Noom can search the captured website user sessions by specific locations that is "fairly accurate" at the county and state level, meaning that it is inevitable that Noom knew it was procuring the surreptitious capturing of electronic communications of citizens of Pennsylvania. FAC ¶¶ 8–9, 50. In other words, Noom knowingly aimed its tortious conduct at Pennsylvania and knew those individuals would be harmed in Pennsylvania as a result of its conduct. *See Hytto*, 2019 WL 8333519, at *4; *Bergstein v. Parmar*, 2014 WL 12586073, at *3–4 (C.D. Cal. June 23, 2014) (evidence of knowledge of plaintiff's connection with forum and evidence of plaintiff's suffering harm in forum as a result of defendant's conduct sufficient to give rise to "express aiming.").[3]

[3] The tortious conduct that Plaintiff complains of occurred within the borders of the Commonwealth and was the result of Noom's intentional decision to solicit business from Pennsylvania residents at the expense of their privacy. Indeed, Noom invited Pennsylvanians to

Nevertheless, Noom attempts to hide behind the argument that because its website is accessible everywhere, it did not expressly aim its website at the citizens of Pennsylvania. But courts regularly reject the argument that a defendant's success in developing a national market means that it did not target any state specifically or that its contacts with a forum state are the unilateral result of the plaintiff. *See, e.g.*, *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 353–54 (4th Cir. 2020) (rejecting arguments that Russia-based website owner's Virginia contacts were fortuitous, and finding that owner's acts of collecting and selling Virginian visitors' data, including location data, showed purposeful availment because they enabled defendant to earn revenue); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011) (website owner's sale of advertising targeted to California residents indicated that defendant had actual or constructive knowledge about its California user base, and exploited that base for commercial gain by selling advertisements).

Like the defendants in *UMG Recordings* and *Brand Techs.*, Noom's website is designed to attract a nationwide audience, which includes Pennsylvanians. Like those defendants, Noom cultivated its website for its own commercial gain in Pennsylvania. For these reasons, Noom has expressly aimed its tortious conduct at Pennsylvania, and it does not violate due process to hold Noom answerable in a Pennsylvania court for privacy violations stemming from a website whose economic value turns, in significant measure, on its appeal to Pennsylvanians.

---

visit its website where Defendant subsequently wiretapped them. *See Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 (3d Cir. 2022) ("*Harriet Carter II*") (holding that an interception occurs where website visitor's device is located).

### B. Under the "Traditional Test," Noom Is Subject to Personal Jurisdiction Here.

In the alternative,[4] this Court has specific personal jurisdiction over Noom under the "traditional test." *See O'Connor*, *v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). The Third Circuit has established a three-part traditional test for determining whether the exercise of specific personal jurisdiction is appropriate. *See id.* "First, the defendant must have purposefully directed its activities at the forum." *Id.* (internal citations omitted). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id*. (internal citations omitted). "Third, the court considers whether the exercise of jurisdiction otherwise comport[s] with 'fair play and substantial justice.'" *Id*. (internal citations omitted).

Specific jurisdiction may be exercised when a defendant is carrying on "part of its general business" in the state, and "the cause of action arises out of the very activity being conducted." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984) (citation and quotation marks omitted); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (explaining that specific jurisdiction requires showing "that the defendant deliberately reached out beyond its home," such as by "exploiting a market in the forum State *or* entering a contractual relationship centered there.") (cleaned up, emphasis added). In *Keeton*, the Court found that the monthly sale of "thousands" of copies of a magazine in New Hampshire could not "by any stretch of the imagination be characterized as random, isolated, or fortuitous." *Id.* at 774. Those contacts alone sufficed to demonstrate that the publisher purposefully availed itself of the opportunity to do business in New Hampshire and could fairly be subjected to a libel action there. *Id.* at 781.

---

[4] It appears that Noom blends the "effects test" analysis into the "traditional test" analysis, but that is incorrect. While the two inquiries are "cut from the same cloth," the two are "distinct" tests, with the "effects test" only applying to intentional torts. *Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 629 (E.D. Pa. 2015); *see also PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co.*, 2020 WL 1526940, at *3 (W.D. Pa. Mar. 31, 2020).

Like the publisher in *Keeton*, Noom deliberately reached beyond its home in New York and exploited a market in Pennsylvania by advertising and selling its health and wellness service through its interactive website. FAC ¶¶ 8, 10. Those same activities led to Noom's interception of Plaintiff's Website Communications—the very conduct at issue in this action. Indeed, Noom intercepted Plaintiff's Website Communications while she took Noom's highly detailed online quiz and signed up for Noom's service from her computer located in Pennsylvania. FAC ¶¶ 57–59. Given that Defendant targeted and accepted subscriptions from Pennsylvania residents (such as Plaintiff) through its website and wiretapped those Pennsylvanians while signing up for Defendant's service, Noom purposefully availed itself to the law of Pennsylvania.

Because Noom knowingly armed its highly interactive website with software that initiates a broad-spectrum wiretap, intercepts communications emanating from a Pennsylvania-based website visitor's browser, and instantaneously transmits/redirects those communications from Pennsylvania to a third party's servers, the Court should follow *Keeton* and conclude that this Court has personal jurisdiction over Noom. FAC ¶¶ 1, 2, 45–53.

## II. Noom's Generic Arguments Regarding Rule 8 Are Not Grounds for Dismissal.

Noom improperly asks this Court to apply an incorrect pleading standard, invoking Federal Rule of Civil Procedure 8. Def. Br. at 9. Contrary to Defendant's argument, Rule 8 does not require Plaintiff to plead her claims with "specificity" as to every factual issue questioned by Defendant at the motion to dismiss stage. Rule 8(a) requires only that the complaint include: 1) a short and plain statement of the grounds of the court's jurisdiction; 2) a short and plain statement of the claim showing that the pleader is entitled to relief; and 3) a demand for the relief sought. Fed. R. Civ. P. 8(a); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's complaint satisfies all three of Rule 8(a)'s requirements. Defendant's argument that Plaintiff has not stated sufficient

facts to give rise to a claim is simply a generic Rule 12(b)(6) argument brought under the banner of Rule 8. But in this section, Defendant fails to identify any specific element of a claim that it contends Plaintiff did not support with factual allegations. Each legal argument raised by Defendant is substantively rebutted by Plaintiff below. Defendant does not identify any standalone basis for dismissal under Rule 8, so its argument under that heading should be rejected.

## III. Plaintiff Sufficiently Pleaded a Violation of WESCA.

### A. Software Is a "Device."

Noom argues that software is not an "electronic, mechanical or other device" under WESCA because anything intangible cannot be considered a device. *See* Def. Br. at 10–13. However, contrary to Noom's reading of WESCA, "device" is not limited to something "physical" and/or "tangible" Indeed, in arguing that WESCA could never apply to software, Noom overlooks that WESCA "emphasizes the protection of privacy." *Com. v. Spangler*, 809 A.2d 234, 237 (Pa. 2002). Further, Noom asks this Court to adopt a hyper restrictive definition of "device" even though "WESCA defines the term 'device' broadly" and "exceptions to WESCA's definition of 'device[]' must be construed narrowly." *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 116 (W.D. Pa. 2019) ("*Harriet Carter I*").

Noom's "device" argument is in direct contradiction of this Court's previous decision in a similar wiretapping case and Defendant's failure to address this Court's previous decision is telling. *See Harriet Carter I*, 426 F. Supp. 3d at 117. Under WESCA, "device" is defined as "*[a]ny device or apparatus*, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic or oral communication" with some exceptions listed that are not relevant here. 18 Pa. C.S.A. § 5702 (emphasis added); *Harriet Carter I*, 426 F. Supp. 3d at 117. In turn, "electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data or intelligence of any

nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system." 18 Pa. C.S.A. § 5702. As this Court has previously recognized, "the relationship between these two definitions [device and electronic communications] is critical to the analysis." *Harriet Carter I*, 426 F. Supp. 3d at 117. The use of the word "any" before "device or apparatus," and as used in the definition of "electronic communication" "implies that the class of technology contemplated by WESCA is broad." *Id.*

While this Court did not ultimately decide whether software constitutes a device under WESCA, this Court nevertheless held that whether something is a "device" is an ultimate question of fact that is not ripe for determination at the Rule 12 stage and will need the benefit of discovery. *See Harriet Carter I*, 426 F. Supp. 3d at 117 (finding that the "device" question "is a fact intensive inquiry" that would benefit from development through discovery); *see also Byrd v. Aaron's, Inc.*, 2012 WL 12887775, at *9 (W.D. Pa. Feb. 17, 2012) (finding plaintiff's allegations regarding device use to be sufficient to overcome motion to dismiss). Given this Court's previous decision on this issue, Plaintiff respectfully requests that the Court defer ruling on whether the Session Replay Code is a "device" until Plaintiff and this Court have had the benefit of discovery.[5]

Regardless, even if the Session Replay Code were not itself a "device" under WESCA Plaintiff alleged facts showing that Session Replay Code still used another device—her computer—to conduct the interception, when the Session Replay Code instructed Plaintiff's

[5] Contrary to Noom's software argument under the Federal Wiretap Act, "[t]he majority of courts to consider this issue have entertained the notion that software may be considered a device for the purposes of the [Federal] Wiretap Act." *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases); *id.* ("The Court also agrees with the government's position that Section 2510(5)'s reference to "mechanism," which is commonly defined as a "process, technique, or system for achieving a result" seems to encompass software.") (citation omitted); *see also Makkinje v. Extra Space Storage, Inc.*, 2022 WL 80437, at *2 (M.D. Fla. Jan. 7, 2022) (denying motion to dismiss claims involving session replay software because "software can constitute a 'device' in the wiretapping context").

computer to run the electrical processes that ultimately intercepted her electronic communications and transmitted them to Session Replay Providers without her knowledge. FAC ¶¶ 67, 94; *see also Hutchins* 361 F. Supp. 3d at 794–95 (finding software itself, and not just the computer on which it is installed, may be considered a device under the Federal Wiretap Act). As such, Plaintiff has sufficiently alleged that Noom procured a "device" in violation of WESCA.

### B. Noom Procured the Interception of, and Disclosed "Contents" of Plaintiff's Electronic Communications.

Noom next contends that the electronic communications captured by the Session Replay Code do not constitute "contents" as defined under WESCA. "Contents" means "any information concerning the substance, purport, or meaning of that communication." 18 Pa. C.S.A. § 5702. The only in-Circuit case that Noom cites is *Google*, but even that case found that "[i]f an address, phone number, or URL is instead part of the substantive information conveyed to the recipient, then by definition it is 'content.'" *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015). Indeed "[t]he line between contents and metadata is not abstract but contextual with respect to each communication." *Id.*

In *Google*, the Third Circuit found "that routing information and content are not mutually exclusive categories. And between the information revealed by highly detailed URLs . . . we are persuaded that—at a minimum—some queried URLs qualify as content." *In re Google*, 806 F.3d at 138–39. If a queried URL qualifies as content, this Court should have no trouble concluding that Plaintiff sufficiently alleged the interception of contents of her communications.

The FAC describes, *at the very least*, content contained in the URL to satisfy the standard in *Google*. FAC ¶¶ 1, 48. But Plaintiff's Complaint describes interception of *much more* than just URL content. The Complaint alleges that Session Replay Code captures, *inter alia*, keystrokes, mouse clicks, device and browser information, location, personal information, and information

*written into form fields*. FAC ¶¶ 1, 47–52. Indeed, the Session Replay Code captured Plaintiff's intimate answers relating to "her gender, age, height, weight, lifestyle, marital status, health conditions, her weight loss goals," along with her email address that she entered into a text field while she took Noom's 10-minute online quiz. FAC ¶¶ 44, 58. Similar information was recently found to be "content" by another court analyzing similar allegations in an analogous wiretapping case. *See Byars v. The Goodyear Tire and Rubber Co.*, 2023 WL 1788553, at *5 (C.D. Cal. Feb. 3, 2023) (denying defendant's motion to dismiss).[6]

Despite the Session Replay Code capturing Plaintiff's intimate responses to questions posed during Noom's quiz, Noom attempts to brush aside its pervasive online surveillance by analogizing it to "browsing a brick-and-mortar store." Def. Br. at 13. Courts have rejected this exact analogy as flawed. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("Admittedly, a customer in brick-and-mortar store does not communicate by searching through the inventory. But the same is not true for off-site shoppers: a customer who calls to inquire about a store's products undoubtedly communicates with the retailer. As does an online patron.").

In any event, whether Plaintiff's Website Communications are "content" is a fact-specific inquiry that need not be decided at the motion to dismiss stage. *In re Google*, 806 F.3d at 137 ("a 'content' inquiry is a case-specific one[.]"). As this Court explained when faced with the same argument in an analogous case, this is an issue that may be better left for review after development of a factual record. *Harriet Carter I*, 426 F. Supp. 3d at 119. Plaintiff respectfully suggests that her

[6] Noom's argument regarding whether the intercepted communications can be linked to specific Noom users is irrelevant to WESCA, which protects against the interception of "contents" of communications, without further regard to the identifying nature of the content being conveyed. *See* Pa. C.S.A. § 5702.

allegations are sufficiently detailed to warrant denial of Noom's motion on this issue, but, in the alternative, Plaintiff submits that the Court could similarly defer ruling until the record is more developed.

**IV. Plaintiff Did Not Consent to the Interception of Her Electronic Communications.**

As the party seeking the benefit of WESCA's mutual consent exception, Noom bears the burden to prove a party consented to the interception. *See In re Pharmatrak, Inc.*, 329 F.3d 9, 19 (1st Cir. 2003); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014). Under WESCA, consent is measured by a reasonable person standard. *Com. v. Byrd*, 235 A.3d 311, 319 (Pa. 2020). Noom incorrectly argues that WESCA's mutual consent exception defeats Plaintiff's wiretapping claim because of its website's purported privacy policy and terms of use. Indeed, Noom argues that because website visitors who sign up for Defendant's trial service eventually check a box confirming they "agree" to a hyperlinked terms of use and privacy policy at the very end of an online quiz, Plaintiff somehow consented to the interception of her Website Communications that occurred *before* she completed her online quiz or even had an opportunity to review (let alone agree) to the purported terms of use or privacy policy. But given that the wiretapping begins immediately upon a user's arrival on Noom's website, a reasonable person is without an opportunity to agree to, or even be put on notice of, the terms of use or privacy policy until they are about to sign up for a trial service, *after* they have already been wiretapped. Thus, Noom's prior consent argument fails. *See* FAC ¶¶ 70–73; *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (agreeing to a privacy policy after a wiretap has already occurred does not furnish prior consent). Further, as explained below, Noom's consent argument fails for other, independent reasons.

First, Noom suggests that Plaintiff implicitly consented to the interception of her communications by the mere fact that she engaged in an electronic communication. To accept this

position would render WESCA, as it applies to electronic communications, wholly meaningless. *See* 1 Pa. C.S.A. § 1922 (the ***entire statute*** is intended to be effective and certain). In support of its argument, Defendant gloms onto language in *Com. v. Proetto*, 771 A.2d 823 (2001), *aff'd*, 837 A.2d 1163 (Pa. 2003), stating that "[a]ny reasonably intelligent person, savvy enough to be using the Internet, however, would be aware of the fact that messages are received in a recorded format, by their very nature, and can be downloaded or printed by the party receiving the message. By the very act of sending a communication over the Internet, the party expressly consents to the recording of the message." *Id.* at 829; *see also Com. v. Cruttenden*, 58 A.3d 95 (Pa. 2012). Notably, however, in these cases the communications at issue involved only two individuals (similar to Plaintiff and Noom)—without a third party intercepting the communications (Session Replay Providers). *See Proetto*, 771 A.2d at 829 (WESCA not violated when the recipient forwarded emails and chat messages to the police); *Cruttenden*, 58 A.3d at 99 (officer texted with defendant using another suspect's phone). Noom's proffered interpretation of WESCA clearly leads to an absurd result and would mean no electronic communications could ever be intercepted. This is inconsistent with the plain language of WESCA.

Second, Noom suggests that Plaintiff consented to the interception of her Website Communications by the mere existence of a privacy policy hyperlinked to the bottom of the homepage of www.noom.com. Noom's argument fails because the privacy policy is an unenforceable browsewrap agreement. "In browsewrap agreements, a company's terms and conditions are generally posted on a website via hyperlink at the bottom of the screen." *James v. Glob. TelLink Corp*, 852 F.3d 262, 267 (3d Cir. 2017). "Unlike online agreements where users must click on an acceptance after being presented with term . . . browsewrap agreements do not require users to expressly manifest assent." *Id.* The enforceability of a browsewrap agreement

"often turn[] on whether the terms or a hyperlink to the terms are reasonably conspicuous on a webpage." *Id.*; *see also McDaid v. Avant, LLC*, 2021 WL 9803613, at *1 (W.D. Pa. Oct. 26, 2021) ("[W]here, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract.") (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). Whether someone has inquiry notice of a browsewrap agreement turns on the design of the website, and whether the link to the browsewrap agreement "is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it," and if so, "courts have refused to enforce the browsewrap agreement." *Nguyen*, 763 F.3d at 1177 (internal citations omitted).

Because Noom admits that its purported privacy policy constitutes a browsewrap agreement, Defendant's privacy policy can only be enforced against Plaintiff if she had actual or constructive knowledge of the privacy policy. However, Plaintiff had neither actual nor constructive knowledge of Noom's privacy policy until she signed up for Noom's subscription services—after she had already been wiretapped. While Noom argues that its privacy policy can be found in a hyperlink at the bottom of its website, Noom has proffered no argument to suggest why Plaintiff had any reason to scroll to the bottom of the website or otherwise see the privacy policy. As alleged, Noom does not ask website visitors to agree to or even view the privacy policy before browsing its website and a reasonable person would not be put on notice of the privacy policy by way of normal interaction with the website. FAC ¶ 74. Because courts frequently reject the argument made by Noom, this Court should follow suit. *See Hussein v. Coinabul, LLC*, 2014 WL 7261240, at *3 (N.D. Ill. Dec. 19, 2014) ("Although the hyperlink's font is adequately contrasted by the color of its background, the hyperlink's location—buried at the bottom of the

webpage—is, without some additional act of notification, insufficient for the purpose of providing reasonable notice."); *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) (holding Terms and Conditions unenforceable where plaintiff "could not even see the link to them without scrolling down to the bottom of the screen—an action that was not required to effectuate her purchase").

## V. Plaintiff Sufficiently Pleaded an Intrusion Upon Seclusion.

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984). "An intrusion upon seclusion can be by electronic means such as wiretapping, photography or the use of binoculars." *Wolfson v. Lewis*, 924 F. Supp. 1413, 1434 (E.D. Pa. 1996). Indeed, the Restatement specifically sets forth wiretapping as an illustration of an actionable invasion of privacy. Restatement (Second) of Torts § 652B, Illustration 2-3.

First, Noom argues that it did not engage in an "intentional intrusion." In support of this assertion, Noom relies on *O'Donnell v. U.S.*, 891 F.2d 1079 (3d. Cir. 1989) for the proposition that Noom did not believe it lacked legal or personal permission to commit the intrusion. *See* Def. Br. at 19. However, as the Third Circuit recognized in *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 293 (3d Cir. 2016), *O'Donnell* "focused on whether the alleged intrusion occurred without "legal *or* personal permission." (citations and quotations omitted) (emphasis in original). In turn, "[c]ourts applying *O'Donnell* have appropriately treated the presence or absence of consent as a key factor in making this assessment." *Id.* Because Plaintiff alleges that Noom wiretapped her electronic communications without permission, this is sufficient to state an

"intentional intrusion." *See* Argument, *supra* § IV; FAC ¶¶ 108, 110; *see also Nickelodeon*, 827 F.3d at 293.

Second, Noom argues that Plaintiff did not have a reasonable expectation of privacy in her Website Communications. This argument is directly contradicted by Plaintiff's specific allegations regarding the basis for her expectation of privacy in electronic communications, as well as how, as evidenced by various surveys, those privacy expectations are shared by the public at large. FAC ¶¶ 17–22, 107. Further, courts routinely find that plaintiffs have a reasonable expectation of privacy in their interactions with websites online. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 604 n.7 (9th Cir. 2020) (even when on the internet, "individuals maintain the expectation that entities will not be able to collect such broad swaths of personal information absent consent[]"); *Byars*, 2023 WL 1788553, at *5 (finding in an analogous wiretapping case that "website users had a reasonable expectation of privacy" in their online interactions and denying defendant's motion to dismiss).

Third, Noom argues that its secret monitoring of Plaintiff's Website Communications was not highly offensive. But this argument misses the mark. Session Replay Providers collected Plaintiff's Website Communications through software designed specifically to capture electronic communications, while providing the code in a format invisible to the average website visitor. Given that what is important is "*how* [defendant] accomplished its tracking," *Nickelodeon*, 827 F.3d at 292 (finding defendant's behavior to be highly offensive); *see also In re Google*, 806 F.3d at 151 (finding defendant's conduct "highly offensive" where the defendant's conduct was

surreptitious), the act of concealing oneself for purposes of surreptitiously wiretapping a person's internet activities could be deemed highly offensive by a reasonable jury.[7]

For these reasons, Plaintiff has pleaded a claim for intrusion upon seclusion.

## CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Court deny Noom's motion in its entirety.

Dated: June 9, 2023

Respectfully submitted,

*/s/ Gary F. Lynch*
Gary F. Lynch
Kelly K. Iverson
Jamisen A. Etzel
Elizabeth Pollock-Avery
Nicholas A. Colella
Patrick D. Donathen
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
gary@lcllp.com
kelly@lcllp.com
jamisen@lcllp.com
elizabeth@lcllp.com
nickc@lcllp.com
patrick@lcllp.com

[7] While this Court previously found that a similar collection of electronic communications was not highly offensive, Plaintiff respectfully submits this case is distinguishable because the Session Replay Code captured more than just Plaintiff's Website Communications, it captured those Website Communications concerning Plaintiff's answers to questions about "her gender, age, height, weight, lifestyle, marital status, health conditions, her weight loss goals." FAC ¶ 58. Such information is much more intimate than an individual's name, address, and email address. *See Harriet Carter I*, 426 F. Supp. 3d. at 123–24.