**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ARIEL OLIVER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NOOM, INC.,<br><br>Defendant. | Case No. 2:22-cv-01857-WSS<br><br>Judge William S. Stickman IV<br><br>*Electronically Filed* |

**DEFENDANT NOOM, INC.'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER NOOM ..... 1

A. Plaintiff Does Not Plead Purposeful Availment ..... 2

B. Plaintiff's Conduct Does Not Arise Out of Noom's Activities in Pennsylvania ..... 3

III. PLAINTIFF'S FAC SHOULD BE DISMISSED UNDER RULE 8(A) ..... 6

IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER RULE 12(B)(6) ..... 6

A. Plaintiff Does Not State a Claim Under WESCA ..... 6

1. Plaintiff Fails to Allege Any Interception ..... 7

2. Plaintiff Consented to Any Alleged Data Collection ..... 11

B. Plaintiff Does Not Adequately Plead a Claim for Intrusion Upon Seclusion ..... 13

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allaham v. Naddaf*,
635 F. App'x 32 (3d Cir. 2015)........................................1

*Allen v. Brown*,
320 F. Supp. 3d 16 (D.D.C. 2018)........................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................6, 13

*Bergstein v. Parmar*,
2014 WL 12586073 (C.D. Cal. June 23, 2014)........................................5

*Byars v. The Goodyear Tire and Rubber Co.*,
2023 WL 1788553 (C.D. Cal. Feb. 3, 2023)........................................10, 14

*Chicarella v. Passant*,
343 Pa. Super. 330 (1985)........................................15

*Commonwealth v. Byrd*,
661 Pa. 85 (2020)........................................12

*Commonwealth v. Diego*,
119 A.3d 370 (Pa. Super. 2015)........................................8, 12

*Commonwealth v. Hart*,
611 Pa. 531 (2011)........................................7

*Commonwealth v. Hogue*,
2019 WL 3545843 (Pa. Super. Ct. Aug. 5, 2019)........................................7

*Commonwealth v. Proetto*,
771 A.2d 823 (2001), *aff'd*, 575 Pa. 511 (2003)........................................11, 12

*D'Jamoos v. Pilatus Aircraft Ltd.*,
566 F.3d 94 (3d Cir. 2009)........................................2

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
948 F.3d 124 (3d Cir. 2020)........................................2, 3

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)........................................14

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021)........................................9

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................9, 11, 15

*Graham v. Noom, Inc.*,
533 F.Supp. 3d 823 (N.D. Cal. 2021)....................10

*Hadnagy v. Moss*,
2023 WL 114689 (E.D. Pa. Jan. 5, 2023)....................5

*Hines v. Overstock.com, Inc.*,
668 F. Supp. 2d 362 (E.D.N.Y. 2009)....................13

*Hussein v. Coinabul, LLC*,
2014 WL 7261240 (N.D. Ill. Dec. 19, 2014)....................13

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998)....................2, 4

*Jacome v. Spirit Airlines, Inc.*,
2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021)....................13, 14

*James v. Glob. TelLink Corp.*,
852 F.3d 262 (3d Cir. 2017)....................12

*Johnson v. Blue Nile*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021)....................10

*Johnson v. TheHuffingtonPost.com, Inc*.,
21 F.4th 314 (5th Cir. 2021)....................3

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984)....................3

*Licea v. Old Navy*,
2023 WL 3012527 (C.D. Cal. Apr. 19, 2023)....................10

*M.H. v. Omegle.com*,
2021 WL 1050234 (D.N.J. Mar. 19, 2021)....................3

*Makkinje v. Extra Space Storage, Inc.*,
2022 WL 80437 (M.D. Fla. Jan. 7, 2022)....................8

*Massie v. Gen. Motors Co.*,
2021 WL 2142728 (E.D. Cal. May 26, 2021)....................4

*Massie v. Gen. Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022)....................9, 10, 14

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....................10

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ....................6

*Nagy v. Bell Telephone Co. of PA*,
292 Pa. Super. 24 (1981)....................15

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................12, 15

*O'Donnell v. U.S.*,
891 F.2d 1079 (3d Cir. 1989)....................13

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019)....................7, 8, 11, 15

*Potter v. Havlicek*,
2008 WL 2556723 (S.D. Ohio June 23, 2008) ....................8

*Remick v. Manfredy*,
238 F.3d 248 (3d Cir. 2001)....................4

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................10, 14

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) ....................5

*State v. Townsend*,
57 P.3d 255 (2002)....................12

*Toys "R" Us, Inc. v. Step Two*,
318 F.3d 446 (3d Cir. 2003)....................2

*UMG Recordings, Inc. v. Kurbanov*,
963 F.3d 344 (4th Cir. 2020) ....................5, 6

*United States v. Bowers*,
2021 WL 2882438 (W.D. Pa. July 8, 2021) ....................14

*United States v. Hutchins*,
361 F.Supp. 3d 779 (W.D. Pa. July 8, 2021) ....................8

*Walden v. Fiore*,
571 U.S. 277 (2014)....................3

*Williams v. What If Holding*,
2022 WL 17869275 (N.D. Cal. 2022) ....................10

## I. INTRODUCTION

Plaintiff's Opposition ("Opp."; ECF No. 24) to the motion to dismiss filed by Defendant Noom, Inc. is a fruitless effort to salvage the many fatal defects in the First Amended Complaint ("FAC"). But Plaintiff cannot avoid the fact that her cookie-cutter pleading, even after amendment, does not establish that the Court can exercise jurisdiction over Noom[1] and does not adequately plead Plaintiff's claims under WESCA or for intrusion upon seclusion.

The Opposition's arguments further highlight the dangers in using a criminal statute to impose crushing civil liability on websites that employ everyday technology to understand their users' navigation of their websites and to improve the user experience. Indeed, Plaintiff's counsel's carpet-bombing litigation strategy has already pulled over 30 websites into meritless litigation in the Third Circuit alone; the number will grow exponentially if these cases are allowed to proceed. Neither the law nor the deficient allegations support this manufactured lawsuit, and the Court should dismiss the FAC with prejudice.

## II. THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER NOOM[2]

Plaintiff's Opposition confirms that her claim of specific jurisdiction fails for many reasons. The Opposition both misstates the legal standard for jurisdiction and incorrectly asserts that Noom conflates the *Calder* "effects test" analysis with the "traditional test" analysis. Opp. at 8 n.4. But, as Noom detailed in its Motion (ECF No. 21), there is ***one*** uniform framework for specific jurisdiction. Plaintiff bears the burden of establishing "with reasonable particularity" that: (1) "defendant must have purposefully directed its activities at the forum,"[3] (2) "plaintiff's claims must arise out of or relate to the defendant's activities," and (3) "exercising personal jurisdiction

---

[1] Unless otherwise noted, defined terms have the same meaning as in Noom's opening brief.
[2] Plaintiff does not dispute that the Court cannot exercise general jurisdiction over Noom.
[3] The Third Circuit has held that this first element requires that defendant "purposefully directed … or otherwise purposefully avail[ed] itself of the privilege of conducting activities" within the forum. *Allaham v. Naddaf*, 635 F. App'x 32, 39 (3d Cir. 2015) (citation omitted).

must not offend traditional notions of fair play and substantial justice." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129-30 (3d Cir. 2020) (cleaned up). This is what Plaintiff calls the "traditional test," which she characterizes as an "alternative" to the *Calder* test (without providing any citation suggesting that there are two independent tests used to show specific jurisdiction). *See* Opp. at 8; *id.* at 8 n.4. In fact, the *Calder* test is part of the traditional test: Plaintiff must show that Noom "expressly aimed [its] tortious conduct at the forum" and the plaintiff "felt the brunt of the harm in the forum" (the *Calder* test) to establish the second prong of the "traditional test," *i.e.*, that her claims "arise out of or relate to" the defendant's activities in the forum. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998) (citing *Calder*). Thus, the "effects" test is not a separate framework for specific jurisdiction but rather a necessary component to the jurisdictional analysis. *See Danziger*, 948 F.3d at 130; *IMO*, 155 F.3d at 265-66.

Plaintiff erroneously argues that "Noom only challenges the expressly aiming prong" of the *Calder* test. Opp. at 5. But as the Motion makes clear, and Plaintiff cannot rebut, she fails to plead (1) purposeful direction or availment and (2) that her claims arise out of or relate to Noom's activities in Pennsylvania, for which the *Calder* test applies. *See Danziger*, 948 F.3d at 129-30.

### A. Plaintiff Does Not Plead Purposeful Availment

Plaintiff argues that Noom "purposefully availed itself" of Pennsylvania by "exploit[ing] a market in Pennsylvania by advertising and selling its health and wellness service through its interactive website." Opp. at 9. But Noom's efforts to "exploit a national market [that] necessarily included Pennsylvania as a target," without more, does not show that Noom purposefully availed itself of conducting activity in Pennsylvania. *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009); *see* Mot. at 6. Indeed, the Third Circuit has held that "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Toys "R" Us, Inc. v. Step Two*, 318 F.3d 446, 454 (3d Cir. 2003). While Plaintiff asserts

that Noom's website is "highly interactive" because it "accepted subscriptions from Pennsylvania residents" and required them to take "Noom's highly detailed online quiz," Opp. at 9, such assertions do not show that Noom "targeted forum residents in any way." *M.H. v. Omegle.com*, 2021 WL 1050234, at *4 (D.N.J. Mar. 19, 2021) ("too much significance to the fact of interactivity … would open [most websites] defendant up to jurisdiction anywhere in the world").

Plaintiff's reliance on *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984) is misplaced. Opp. at 8-9. There, the plaintiff sued Hustler magazine for libel based on the "regular distribution" in New Hampshire of thousands of physical copies of the magazine. *Keeton*, 465 U.S. at 772. This conduct showed that Hustler "continuously and deliberately exploited the New Hampshire market" with actions ***specifically*** sufficient to justify the exercise of jurisdiction. *Id.* at 773-74, 781. In contrast, Plaintiff here fails to establish that Noom had any such "regular" or "continuous[] and deliberate[]" contact with the Pennsylvania market. The *Keeton* case also involved the physical action of distributing a magazine into the forum, whereas here, the lawsuit concerns Noom's jurisdiction-agnostic operation of its Website. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) (noting *Keeton* involved "physical entry" into forum). Unlike a publisher who physically sent thousands of magazines into the forum, Noom's website is universally accessible. *See Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 325 (5th Cir. 2021) (noting "websites are different" from print magazines and distinguishing *Keeton* on this basis). Thus, Plaintiff fails to show that Noom purposefully availed itself of the Pennsylvania market.

### B. Plaintiff's Conduct Does Not Arise Out of Noom's Activities in Pennsylvania

To establish that Plaintiff's claims "arise out of" Noom's contacts with Pennsylvania, the applicable *Calder* effects test requires a showing that Noom "expressly aimed [its] tortious conduct at the forum to make the forum the focal point of the tortious activity" and Plaintiff must have "felt the brunt of the harm in the forum." *Danziger*, 948 F.3d at 130 (cleaned up); *see* Opp. at 5. To

show that Noom "expressly aimed" its conduct at Pennsylvania, Plaintiff must show (1) "specific activity" indicating that Noom expressly aimed its conduct at Pennsylvania and (2) Noom "knew" that Plaintiff would "suffer the brunt of the harm" in Pennsylvania. *IMO*, 155 F.3d at 265-266.

The Opposition argues that Noom "intentionally targeted its good and services at Pennsylvania citizens" through the "use of its interactive website" that serves "over 45 million users worldwide" because "the fact that some of those users (such as Plaintiff during her free trial period) are Pennsylvania citizens demonstrates that Noom must have known that Pennsylvania citizens would use its website." Opp. at 6. But Plaintiff cites no case law for such an extraordinary argument, which would allow for specific jurisdiction over a website if *any* of its users are citizens of the forum state. This is not the law: "foreseeability alone has never been a sufficient benchmark for personal jurisdiction." *IMO*, 155 F.3d at 259 n.3 (quotations omitted). More importantly, a website that is "accessible worldwide" provides no basis to conclude that defendant "kn[ew] that harm [to plaintiff] was likely to be caused" in a particular forum. *Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001); *see also Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *4 (E.D. Cal. May 26, 2021) (defendant's "operation of an internationally accessible website" using session replay software is "insufficient to serve as a ground for personal jurisdiction"); Mot. 7-9.

Plaintiff also argues that Noom expressly aimed its conduct at Pennsylvania because the Session Replay Code on its website uses IP addresses to surface geolocation data. Opp. at 6. Not so. As an initial matter, Plaintiff alleges only that FullStory Script "enables websites such as Noom to search recorded website user sessions by specific locations," without specifying whether Noom does ***in fact*** search by specific locations. FAC ¶ 50. Moreover, Plaintiff fails to allege that any purported collection of geolocation data is specifically directed at Pennsylvania citizens and, as noted above, merely knowing that there are Pennsylvania citizens visiting Noom's website does not establish personal jurisdiction. *See IMO*, 155 F.3d at 259 n.3.

Plaintiff fares no better with her reliance on *Bergstein v. Parmar*, 2014 WL 12586073 (C.D. Cal. June 23, 2014) and *S.D. v. Hytto Ltd*., 2019 WL 8333519 (N.D. Cal. May 15, 2019). In *Bergstein*, the defendant recorded the parties' telephone conversations for the sole, specific "*purpose of extorting money from [plaintiff]* in California." 2014 WL 12586073, at *4. The *Bergstein* defendant's actions targeted a specific person in California, which is clearly not the case here, where Noom advertises "across the country (including Pennsylvania)," its app has over 45 million users from 100 countries, and its Website is accessible worldwide. FAC ¶¶ 10, 10 n.2. *Hytto* is also inapposite because that court analyzed whether a Chinese company was subject to personal jurisdiction in the United States by focusing on the "defendant's contacts *with the U.S. as a whole rather than on contacts with a particular forum state*." 2019 WL 8333519, at *2[4].

Plaintiff, moreover, fails to rebut Noom's authorities that make clear that the alleged tort must be "specifically circulated or concentrated in Pennsylvania" to be deemed "expressly aimed at Pennsylvania." *Hadnagy v. Moss*, 2023 WL 114689, at *7 (E.D. Pa. Jan. 5, 2023); *see* Mot. 7-9. As Plaintiff concedes, Noom generally advertises "across the country (including in Pennsylvania)," which has resulted in "a robust market for its services throughout the *U.S.*" Opp. at 4. Plaintiff fails to plead any factual allegation that points to a "specific activity" by which Noom "targeted" or "directed" its conduct towards Pennsylvania.

Finally, Plaintiff's citations to two out-of-circuit cases are distinguishable because—unlike here—they each involved allegations that the defendant targeted the forum state in particular. In *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344 (4th Cir. 2020), where the court did not even apply the *Calder* test, the court determined it could exercise jurisdiction over a website operator where the forum state, Virginia, was "one of the most popular states in terms of unique visitors as well as number of visits," and "[f]ar from being indifferent to geography," the website displayed

[4] Emphases added unless otherwise indicated.

Virginia-specific advertising based on a user's IP address and knowingly sold advertising space directed to Virginia. *Id.* at 353-54. Likewise, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011), turned heavily on the defendant website's "specific focus on the California-centered celebrity and entertainment industries," its advertising tailored to Californians, and fact that the website's "economic value turns, in significant measure, on its appeal to Californians." *Id.* at 1230. In contrast here, Plaintiff does not and cannot allege that Noom targets Pennsylvania in any way, much less derives differentiated economic value from Pennsylvanian website visitors.

## III. PLAINTIFF'S FAC SHOULD BE DISMISSED UNDER RULE 8(A)

Plaintiff asks this Court to reject Noom's Rule 8 arguments because Rule 8 does not require Plaintiff to plead her claims with "specificity" as to every factual issue at the dismissal stage. But Noom claimed no such thing, arguing instead that Rule 8 requires that a complaint "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). By providing only barebones allegations about her site visit, Plaintiff has not met this standard. Plaintiff further argues that Noom "fails to identify any specific element of a claim that it contends Plaintiff did not support with factual allegations" that would warrant dismissal under Rule 8(a). Opp. at 10. But Noom identified, and Plaintiff does not rebut, that Plaintiff fails to plead with any factual specificity, *inter alia*, (1) whether and when FullStory Script captured the information Plaintiff allegedly provided on Noom's website (elements of the WESCA and invasion of privacy claims) and (2) whether Plaintiff has ever used Noom after her trial membership expired or intends to ever use Noom's services again (an element of her injunctive relief request). Mot. at 9. Because the FAC fails to show that Plaintiff is "entitled to relief," it should be dismissed. *See Twombly*, 550 U.S. at 555.

## IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER RULE 12(B)(6)

### A. Plaintiff Does Not State a Claim Under WESCA

### 1. Plaintiff Fails to Allege Any Interception

**No Device Alleged.** Plaintiff erroneously argues that Noom's definition of "device" is "in direct contradiction of this Court's previous decision" in *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108 (W.D. Pa. 2019) (Stickman, J.) (hereinafter "*Harriet Carter I*"). Opp. at 10. Not so. In *Harriet Carter I*, the Court denied the motion to dismiss the WESCA claim "so that the parties can build a factual record on the extraterritorial application of the statute," which is not at issue here. *Harriet Carter I*, 426 F. Supp. 3d at 116. In so holding, the Court expressly stated that its "examination of the substantive issues raised by Defendants [including what constitutes a 'device'] is dicta," *id.* at 116 n.4; it went on to observe that WESCA defines the terms "device" and "electronic communication" broadly, though the definitions "are not limitless." *Id.* at 117. The Court did not further delve into the definition of "device," given that the discovery process intended to assess the extraterritorial application of WESCA "will give the parties an opportunity to develop a record that contextualizes the conduct at issue in light of this statutory language." *Id.*

The non-binding discussion of "device" in *Harriet Carter I*, however, did not address key arguments Noom's Motion made. Indeed, the *Harriet Carter I* parties did not raise, and thus the Court did not consider, the dictionary definitions of "device" that demonstrate that the word's "plain and ordinary meaning" refers to only tangible objects, and something more than software code. *Commonwealth v. Hogue*, 2019 WL 3545843, at *4 n.8 (Pa. Super. Ct. Aug. 5, 2019); *see Commonwealth v. Hart*, 611 Pa. 531, 549 (2011) ("common and approved" definitions may be "ascertained by examining its dictionary definition"); Mot. at 10-11. For example, The American Heritage Dictionary of the English Language defines "device" as "[a]n object designed and manufactured to perform one or more functions." Mot. at 11.

Plaintiff fails to rebut not only the plain dictionary definitions of "device," but also the fact that no Pennsylvania court has extended the meaning of "device" under WESCA to encompass

intangible things like software code. *See* Mot. at 11-12; *e.g.*, *Commonwealth v. Diego*, 119 A.3d 370, 376 (Pa. Super. 2015) (interpreting "device" to mean computer tablet). Plaintiff also mischaracterizes the Court's opinion in *Harriet Carter I* by asserting it "held that whether something is a 'device' is an ultimate question of fact that is not ripe for determination at the Rule 12 stage." Opp. at 11. Rather, in that case, where the Court already denied the motion to dismiss so that discovery relating to the extraterritorial application of the statute could be obtained, the Court observed that discovery would further help develop a record "that contextualizes the conduct at issue in light of" WESCA's statutory language. *Harriet Carter I*, 426 F. Supp. 3d at 117.[5]

Lastly, Plaintiff admits that Session Replay Code had to rely on "another device—[the] computer—to conduct the interception, when the Session Replay Code instructed Plaintiff's computer to run the electrical processes that ultimately intercepted her electronic communications." Opp. at 11-12; *see also* FAC ¶ 67. This acknowledges Session Replay Code is software that cannot conduct the alleged interception alone, and instead requires a combination with hardware components to carry out the alleged interception. As such, Plaintiff does not satisfy the plain meaning of "device" as a tangible object or "a piece of equipment or a mechanism" because "device" does not encompass software like Session Replay code. *Potter v. Havlicek*, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (software is not a "device" under the Wiretap Act because it "alone cannot be used to intercept communications"); *see also* Mot. 11-13.

**No Contents Alleged.** Plaintiff's Opposition fails to counter Noom's argument that the

---

[5] Plaintiff's citations to *United States v. Hutchins* and *Makkinje v. Extra Space Storage, Inc.* are unavailing. Though *Hutchins* claimed that a majority of the courts have "entertained the notion that software may be considered a device" for the Wiretap Act, the court provides almost no analysis in support. 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019). And neither *Hutchins*, nor the cases it cites, analyzed the ordinary meaning of "device." Likewise, the *Makkinje* court provides a similar dearth of analysis, and its reference to the Eleventh Circuit opinion that "determined that software can constitute a 'device' in the wiretapping context" was addressing the meaning of "device-making equipment" in a different statute. 2022 WL 80437, at *2 (M.D. Fla. Jan. 7, 2022).

"contents" of her communications were not intercepted. Mot. at 13-16. ***First***, Plaintiff does not dispute that the "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation," "IP addresses and geolocation data," and the like unrelated to Noom's 10-minute quiz are not "contents" under WESCA. *See* Mot. at 14; Opp. at 12-13. Instead, Plaintiff relies on *In re Google Inc. Cookie Placement Consumer Priv. Litig.* to claim that clicks, mouse movements, URLs, and related data can in certain situations constitute "contents." 806 F.3d 125 (3d Cir. 2015). In that case, the Court found that "some queried URLs qualify as content" because, *inter alia*, querying a URL in Google's search product may reveal "the substance and meaning of the communication … that the user is conducting a search for information on a particular topic." *Id.* at 137, 139. Plaintiff, however, has not made such a showing here. She has not identified a single instance in which she can tie a click, mouse movement, URL, or similar information to the specific meaning of the communication, *i.e.*, what particular topic Plaintiff is searching for. Nor can Plaintiff even allege that she ran any queries on Noom's website, which does not offer a search engine capability like Google.

***Second***, even in connection with the data allegedly collected during Noom's 10-minute quiz, Plaintiff does not specifically allege that any information she provided in response to that quiz was recorded by Session Replay Code. *See* Mot. at 15. Indeed, Plaintiff here fails to allege that Session Replay Code recorded *any* information she indicated during the quiz, much less that this information was recorded in a way that reveals the substance of her personal information. Plaintiff also cannot dispute that she fails to allege the Session Replay Code collects information in a way that links specific answers to Noom's specific visitors. Mot. at 15.[6]

---

[6] Even if the code collected information entered into text fields, Opp. at 12-13, such information if not linked to Plaintiff would not be "contents" under WESCA. *See Massie v. Gen. Motors LLC*, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) (dismissing claim under Wiretap Act where "none of Plaintiffs' personal information is implicated by" the "anonymized, non-personal data" allegedly collected by session replay software); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp.

Plaintiff fares no better relying on *Byars v. The Goodyear Tire and Rubber Co.*, 2023 WL 1788553 (C.D. Cal. Feb. 3, 2023). The *Byars* plaintiff alleged, and the court assumed without analysis, that users of an online chat feature could "share highly sensitive personal data." *Id.* at *5. But, as discussed above, Plaintiff here fails to allege that Session Replay Code recorded any of her personal data. In further contrast to *Byars*, *Graham v. Noom, Inc.* determined that a user's online movements are not "contents" because they reveal no substance at all. 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021). *Graham* has been endorsed by numerous courts. *See Johnson v. Blue Nile*, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021); *Licea v. Old Navy*, 2023 WL 3012527, at *3 (C.D. Cal. Apr. 19, 2023); *Williams v. What If Holding*, 2022 WL 17869275, at *3 (N.D. Cal. 2022).

Plaintiff also fails to rebut that the Session Replay Code on Noom's website is akin to the videotaping of a consumer browsing a brick-and-mortar store, which is not actionable under the Wiretap Act. *Cf. Allen v. Brown*, 320 F. Supp. 3d 16, 38 (D.D.C. 2018) ("silent video surveillance is not covered by [Wiretap Act]"); *see* Mot. at 13-14. Plaintiff argues that courts have rejected this analogy but cites in support just a single out-of-circuit case, *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019). Opp. at 13. But the *Revitch* opinion focused "on whether interactions constitute a 'communication'" under California's wiretap act, as opposed to whether the "contents" of such communication were intercepted. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135 (E.D. Cal. 2021). Notably, a court in this Circuit has already held *Revitch* is unavailing in a session replay case, finding that plaintiffs fail to explain how collection of "anonymized, non-personal data … harms their privacy interests in any way." *Massie*, 2022 WL 534468, at *5.[7]

3d 1318, 1321 (S.D. Fla. 2021) (mouse movements, pages visited, and keystrokes, including information input by plaintiff, were not "contents" under Florida law); Mot. at 14-15.

[7] The *Revitch* court also did not consider the differences between off-site shoppers who directly call a store and online visitors that browse a website. The off-site shoppers open a direct and targeted line of communication with the store and make inquiries that require responses from the retailer, whereas website users do not take such intentional steps to communicate with the retailer.

Lastly, Plaintiff erroneously argues that this Court held in *Harriet Carter I* that whether communications are "content" is "better left for review after development of a factual record." Opp. at 13. But that was a case-specific ruling, where the Court found that the issue of whether defendant "intercepted and transmitted [plaintiff's] data" was a disputed question of fact where plaintiff alleged that her PII was entered into form fields and intercepted but defendant contended that plaintiff "never entered PII into a form field on [their] website to begin with." *Harriet Carter I*, 426 F. Supp. 3d at 112, 119. Noom does not contend the same here, nor is there any other pending question of fact relating to whether Noom acquired the data alleged as the "contents" of Plaintiff's Website Communications. In fact, the Court noted that whether data "constituted 'content' under WESCA" is a "matter of law," and the Court should find that Plaintiff failed to allege that the "contents" of any communication were intercepted here. *Id.* at 119.

### 2. Plaintiff Consented to Any Alleged Data Collection

The Opposition focuses on three arguments to demonstrate that Plaintiff did not consent to the alleged data collection. ***First***, Noom does not, as Plaintiff claims, assert that engaging in any electronic communication constitutes implicit consent to the interception of that communication. Opp. at 14-15. Rather, Noom's argument focuses on what a reasonable person[8] "knew or should have known" when sending a communication over the Internet, and that such a "reasonably intelligent person, savvy enough to be using the Internet," should have known that she was "expressly consent[ing] to the recording" of her website communications by the entities that are a part of that communication. *Commonwealth v. Proetto*, 771 A.2d 823, 829 (2001), *aff'd*, 575 Pa. 511 (2003); *see In re Google*, 806 F.3d at 143; Mot. at 16-17.

For example, when a reasonable person sends an email, it is sent with the "expectation that [it] first must be recorded on another computer's memory" to be received and read by the intended

[8] Plaintiff admits consent under WESCA is measured by a reasonable person standard. Opp. at 14.

recipient. *State v. Townsend*, 57 P.3d 255, 260 (2002); *see Diego*, 119 A.3d at 377 (a reasonable person's knowledge that she is being recorded may be "surmised from the very nature of the selected means of transmission"). Similarly, when Plaintiff completed the 10-minute quiz on Noom's website, she alleges that she entered her email address on Noom's website "in order to receive a copy of the results of her quiz." FAC ¶ 58. In doing so, Plaintiff should have known that her quiz results "first must be recorded" before a copy can be sent to her by email. *Townsend*, 57 P.3d at 260. As such, Plaintiff "expressly consent[ed] to the recording" of her website communications transmitted to Noom's website. *Proetto*, 771 A.2d at 829; *see Diego*, 119 A.3d at 376; *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016) ("Most of us understand that what we do on the Internet is not completely private … [and] recognize, even if only intuitively, that our data has to be going somewhere.").

***Second***, Plaintiff further "consent[ed] by conduct" by browsing Noom's website, which linked to Noom's Privacy Policy that put her on notice that her interactions with the website may be "monitored or recorded." *Commonwealth v. Byrd*, 661 Pa. 85, 98 (2020); *see* Mot. at 16-17. Plaintiff argues that Noom "has proffered no argument to suggest why Plaintiff had any reason to scroll to the bottom of the website or otherwise see the privacy policy." Opp. at 16. But as Plaintiff's own authorities provides, "inquiry notice" or constructive knowledge of Noom's Privacy Policy is adequate under WESCA, and Plaintiff did not have to actually read the policy. *Id.*; *see Byrd*, 661 Pa. at 93, 97 (prisoner consented to being "recorded" even though he "may not have heard" the warning because "reasonably intelligent person" should have known); Mot. at 17.

***Third***, Plaintiff also argues that Noom's Privacy Policy is an unenforceable browsewrap agreement, but its own authority clarifies that a browsewrap agreement can be enforceable if "the terms are reasonably conspicuous on a webpage." *James v. Glob. TelLink Corp.*, 852 F.3d 262, 267 (3d Cir. 2017). Here, the link to the Privacy Policy was underlined and "reasonably

conspicuous" on Noom's website, and thus sufficient to show that Plaintiff consented by conduct to any alleged collection of data. *See Jacome v. Spirit Airlines, Inc.*, 2021 WL 3087860, at *7 (Fla. Cir. Ct. June 17, 2021) (finding that privacy policy linked "on the bottom of every page" provided requisite notice and consent for website operator's session replay activities)[9].

### B. Plaintiff Does Not Adequately Plead a Claim for Intrusion Upon Seclusion

***Intentional Intrusion***. Plaintiff does not dispute that Noom believed it had legal permission to commit the alleged intrusion. Mot. at 18. Plaintiff then argues that under *O'Donnell v. U.S.*, 891 F.2d 1079 (3d Cir. 1989), whether an intentional intrusion occurred turns on the "presence or absence of consent" and asserts there was an intrusion based solely on her allegation in the FAC that Noom wiretapped her electronic communications without consent. Opp. at 17. But such "labels and conclusions" can be disregarded and "will not" survive a motion to dismiss. *Twombly*, 550 U.S. at 545. Plaintiff consented to any alleged recording or collection of her communications with Noom's website. *See supra* Section IV.A.2; Mot. at 18-19. Moreover, even if Plaintiff contends that there was no consent, *O'Donnell* provides that a defendant commits "an intentional intrusion ***only if he believes, or is substantially certain***, that he lacks the necessary legal or personal permission." 891 F.2d at 1083. Plaintiff makes no allegation specifying how Noom believed or was substantially certain that it lacked the necessary permission for the alleged conduct at issue here. Accordingly, Plaintiff fails to plead that there was an intentional intrusion.

***Reasonable Expectation of Privacy***. Plaintiff argues in conclusory fashion that she had a reasonable expectation of privacy in her Website Communications based on her FAC allegations, "various surveys," and "expectations [that] are shared by the public at large." Opp. at 18. But Plaintiff wholly fails to rebut how she "has no legitimate expectation of privacy in information

---

[9] *Hussein v. Coinabul, LLC*, 2014 WL 7261240, at *3 (N.D. Ill. Dec. 19, 2014) and *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009) are inapposite as they address whether terms of service were conspicuous enough to provide notice of contractual terms.

[she] voluntarily turn[ed] over to" Noom via its website, especially in light of having been "forewarned of [its] possible disclosure" by Noom's Privacy Policy. *United States v. Bowers*, 2021 WL 2882438, at *3 (W.D. Pa. July 8, 2021); *see* Mot. at 19.

While Plaintiff contends that courts "routinely" find plaintiffs have a reasonable expectation of privacy in online interactions, neither of her cited authorities is relevant here. Opp. at 18. For example, in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), the plaintiffs alleged that the defendant was compiling a "cradle-to-grave profile" of logged-out users' browsing history, collecting "broad swaths" of information from seven million websites that employed defendant's plug-ins, for defendant's own purposes and contrary to its privacy policy. *Id.* at 604 n.7. *Byars* did not even involve an intrusion of seclusion claim; the court assumed, without analysis, that users of an online chat feature could "share highly sensitive personal data" in which they had a reasonable expectation of privacy. 2023 WL 1788553, at *5.

In contrast to these authorities, courts regularly hold that individuals have no reasonable expectation of privacy over their interactions with websites. *See, e.g.*, *Massie*, 2022 WL 534468, at *5 (no reasonable expectation of privacy in data captured through session replay software); *Revitch*, 2019 WL 5485330, at *3 ("Internet communications do not reasonably give rise to [an] expectation … that the conversation is not being … recorded."); *Jacome*, 2021 WL 3087860, at *6–7 ("[T]here can be no reasonable expectation of privacy from a third-party website owner when Plaintiff voluntarily browses through that third-party's website."). The same outcome follows here.

***Highly Offensive Intrusion***. Plaintiff argues that Noom's alleged conduct is highly offensive because of the "secret" way in which it "conceal[ed] [itself] for purposes of surreptitiously wiretapping a person's internet activities." Opp. at 18-19. But nowhere does Plaintiff explain how such "surreptitious[]" conduct "would cause mental suffering, shame or humiliation to a person or ordinary sensibilities" sufficient to give rise to an intrusion claim.

*Harriet Carter I*, 426 F. Supp. 3d at 122; *see* Mot. at 19-20. Nor does Plaintiff attempt to argue how Noom's alleged conduct is more offensive than the conduct in *Chicarella v. Passant*, 343 Pa. Super. 330 (1985) (investigator supplied plaintiff's medical records to his opponent in a lawsuit) and *Nagy v. Bell Telephone Co. of PA*, 292 Pa. Super. 24 (1981) (telephone company disclosed plaintiff's call records to her abusive husband). Indeed, as this Court held, the "nature of the conduct needed to establish an invasion of privacy claim" is "extreme," and the alleged act of "collecting [a defendant's] keystrokes, mouse clicks, [] PII," and the like "is simply not the type of highly offensive act to which liability can attach." *Harriet Carter I*, 426 F. Supp. 3d at 122[10].

Plaintiff cites *In re Google* and *Nickelodeon* to argue that the purported "monitoring" of Plaintiff's communications is de facto highly offensive; however, Plaintiff's reliance is misplaced. Opp. at 18. The misconduct alleged against the *In re Google* defendant was *deceptive* conduct—"characterized by deceit and disregard," including "overriding the plaintiffs' cookie blockers, while concurrently announcing … that internet users could 'reset your browser to refuse all cookies'" and assuring Safari users that their blockers were effective. *In re Google*, 806 F.3d at 150. No such conduct is alleged here. Likewise, in *Nickelodeon*, plaintiffs alleged that Viacom collected children's information while deceitfully providing the "message to parents about not collecting children's personal information," which further "may have encouraged parents to permit their children to browse those websites under [such] false pretenses." 827 F.3d at 295. In contrast, there is no false presence or lie here. As such, Noom's alleged conduct does not rise to the level of "highly offensive" conduct that would warrant an intrusion upon seclusion claim.

## V. CONCLUSION

Given the above, Noom respectfully asks the Court to dismiss the FAC with prejudice.

---

[10] Plaintiff's assertion that Noom's alleged conduct "could be deemed highly offensive by a reasonable jury" is irrelevant, where the conduct is not highly offensive as a matter of law.

Dated: June 29, 2023

Respectfully submitted,

*/s/ Kyle C. Wong*
Kyle C. Wong*
kwong@cooley.com
Aarti Reddy*
areddy@cooley.com
Sharon Song*
ssong@cooley.com
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: 415-693-2000
*Admitted *Pro Hac Vice*

Maria Greco Danaher
PA I.D. No. 47036
Email: maria.danaher@ogletree.com
**OGLETREE DEAKINS**
One PPG Place, Suite 1900
Pittsburgh, PA 15222
Telephone: 412-394-3390

*Counsel for Defendant*
Noom, Inc.