IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ARIEL OLIVER, *individually and on behalf of all others similarly situated,*

*Plaintiff,*

v.

NOOM, INC.,

*Defendant.*

Civil Action No. 2:22-cv-1857

Hon. William S. Stickman IV

# MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Ariel Oliver ("Oliver") filed a putative class action on behalf of herself and all others similarly situated, alleging that Defendant Noom, Inc. ("Noom") unlawfully intercepted and recorded website users' electronic communications with Noom's website. (ECF No. 15). In the First Amended Class Action Complaint ("Amended Complaint"), Plaintiffs bring a claim for violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa. C.S. § 5701, *et. seq*. (Count I), and a Pennsylvania common law claim for invasion of privacy (Count II). Presently before the Court is Noom's Motion to Dismiss the First Amended Complaint for lack of personal jurisdiction and for failure to state a claim. (ECF No. 20). For the reasons set forth below, Noom's Motion to Dismiss the First Amended Complaint (ECF No. 20) will be granted in part and denied in part.

## I. Factual and Procedural Background

Noom is a subscription-based "digital health and wellness platform" organized under Delaware law with its principal place of business in New York. (ECF No. 15, ¶¶ 6, 43). "Noom

operates the website www.noom.com, as well as all of its subpages." (*Id.* ¶ 43). According to the Amended Complaint, "Noom intentionally procures and embeds various Session Replay Codes from Session Replay Providers on its website to track and analyze website user interactions with www.noom.com and its subpages." (*Id.* ¶ 45). "One such Session Replay Provider that Noom procures is FullStory." (*Id.* ¶ 46). FullStory is the owner and operator of a Session Replay Code called FullStory Script, which, according to the Amended Complaint, "records all website visitor actions, including information typed by the website users while on the website." (*Id.* ¶ 47). This information "can include names, emails, phone numbers, addresses, social security numbers, date[s] of birth, and more[.]" (*Id.*). FullStory Script also records "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, network requests, and more." (*Id.* ¶ 48). It also collects website users' IP addresses, geolocation data, as well as "highly personal information and substantive communications that can be linked directly to a website user's identity[.]" (*Id.* ¶¶ 49, 50). The information collected by FullStory Script is stored on FullStory's servers and "can be translated into a simulation video" showing how a user interacted with the website. (*Id.* ¶ 49).

Oliver is a Pennsylvania citizen who, at all times relevant to this lawsuit, resided in Pennsylvania. (*Id.* ¶ 5). According to the Amended Complaint, while in Pennsylvania, Oliver visited Noom's website and its subpages to browse for various products. (*Id.* ¶¶ 54, 57). "[T]he FullStory Script was operative on Noom's website and subpages during [Oliver's] visits to Noom's website." (*Id.* ¶ 56). Oliver "communicated with Noom's website by using her mouse to hover and click on certain services and typing her personal information in text fields." (*Id.* ¶ 57). While on Noom's website, Oliver signed up for a trial membership, which required her "to complete a 10-minute quiz where Noom asked questions relating to her weight loss goals, her gender, age,

height, weight, lifestyle, marital status, health conditions, [and] her weight loss goals." (*Id.* ¶ 58). "At the end of the quiz, Noom asked [Oliver] to enter her email address in order to receive a copy of the results of her quiz." (*Id.*).

Upon completing the quiz, website users are asked to agree to Noom's Privacy Policy and Terms of Use. (*Id.* ¶ 73). According to the Amended Complaint, website visitors are not asked to agree to Noom's Privacy Policy or Terms of Use at any time prior to the completion of Noom's introductory quiz. (*Id.*). Noom's website contains a link to Noom's Privacy Policy and Terms of Use, but according to Plaintiffs, the link is "buried at the very bottom of the website in tiny, non-contrasting font that is unobtrusive and easy to overlook." (*Id.* ¶ 74). Based on these factual allegations, Oliver initiated this lawsuit, claiming that Noom unlawfully intercepted her communications with Noom's website without prior consent. (*Id.*). Oliver brings this action individually and on behalf of "[a]ll natural persons in Pennsylvania whose Website Communications were captured in Pennsylvania through the use of Session Replay Code embedded in www.noom.com." (*Id.* ¶ 75).

## II. Legal Standards

### A. Fed. R. Civ. P. 12(b)(2)

Federal Rule of Civil Procedure ("Rule") 12(b)(2) requires a court to dismiss a case when a court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). A court must analyze jurisdictional contacts on a claim-by-claim basis. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 104 (3d Cir. 2004). Once a defendant contests the sufficiency of personal jurisdiction, the burden shifts to a plaintiff to establish personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). If there is no evidentiary hearing, a plaintiff must make a prima facie case by furnishing facts that establish with reasonable particularity that personal jurisdiction

exists. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (citation omitted). If a court holds an evidentiary hearing, the standard of proof elevates to a preponderance of the evidence standard. *LaRose v. Sponco Mfg., Inc.*, 712 F. Supp. 455, 458–59 (D.N.J. 1989) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). *See also Hufnagel v. Ciamacco*, 281 F.R.D. 238, 244 (W.D. Pa. 2012) (citing cases). If a plaintiff meets his burden, the burden shifts back to the defendant to present a compelling case that personal jurisdiction is unreasonable. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

A plaintiff's case cannot merely rely on the pleadings but must be supported by sworn affidavits or other competent evidence. *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 & n.9 (3d Cir. 1984). All allegations made by a plaintiff are accepted as true and all disputed facts are construed in the plaintiff's favor. *Carteret*, 954 F.2d at 142 n.1. To that end, any conflicts between the evidence submitted by a plaintiff and a defendant are construed in a plaintiff's favor. *In re Enter. Rent-A-Car Wage & Hour Empl.'t Practices Litig.*, 735 F. Supp. 2d 277, 307 (W.D. Pa. 2010). If a plaintiff initially fails to meet his burden but makes factual allegations suggesting that the requisite contacts exist, a court can order jurisdictional discovery to ameliorate the jurisdictional inquiry. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).

**B. FED. R. CIV. P. 12(b)(6)**

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a

plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

## III. ANALYSIS

### A. Noom's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

In determining its authority to assert personal jurisdiction over a matter, a federal district court sitting in diversity applies the law of the forum in which it sits. Fed. R. Civ. P. 4(e).[1] This

[1] "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)) (internal quotation marks omitted). "This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Id.* (quoting Fed. R. Civ. P. 4(k)(l)(A)).

Court sits in Pennsylvania and will apply Pennsylvania's long-arm statute, which provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b). A federal court sitting in diversity in Pennsylvania must therefore look to federal constitutional doctrine and jurisprudence to determine whether a defendant is subject to personal jurisdiction. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). "The due process limit to the exercise of personal jurisdiction is defined by a two-prong test." *Id.* To have personal jurisdiction, (1) "the defendant must have made constitutionally sufficient minimum contacts with the forum[,]" and, if the first prong is satisfied, the court must determine that (2) the exercise of jurisdiction would "comport with traditional notions of fair play and substantial justice." *Id.* at 150-51 (internal quotations omitted).

There are two types of personal jurisdiction: general and specific. *See Helicopteros Nacionales de Colombia*, 466 U.S. 408, 414 & nn.8-9 (1984). General jurisdiction may be exercised "only when a defendant is 'essentially at home' in the [s]tate." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). Specific jurisdiction "covers defendants less intimately connected with a [s]tate," and can be exercised based on actions taken by the defendant in the forum state. *Id.* Here, Plaintiffs only argue that the Court has specific jurisdiction over Noom.

Specific personal jurisdiction was founded "on an idea of reciprocity between a defendant and a [s]tate[,]" and may only be exercised over a company when the "company 'exercises the privilege of conducting activities within a state'—thus 'enjoy[ing] the benefits and protection of [its] laws[.]'" *Id.* at 1025 (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp.*

*& Placement*, 326 U.S. 310, 319 (1945)). Specific jurisdiction requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," thereby providing "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit[.]" *Burger King Corp.,* 471 U.S. at 472 (internal quotations and citations omitted). To show that specific personal jurisdiction is proper, Plaintiffs must establish the following three elements with "reasonable particularity": (1) that Noom "purposefully directed its activities at" Pennsylvania; (2) that their claims "arise out of or relate to" Noom's activities; and (3) that exercising personal jurisdiction will not "offend traditional notions of fair play and substantial justice." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129-130 (3d Cir. 2020) (internal quotations omitted). Noom argues that personal jurisdiction does not exist because Plaintiffs have not established that (1) Noom purposefully directed its activities at Pennsylvania or (2) that Plaintiffs' claims arise out of or relate to Noom's activities. *See* (ECF No. 21, p. 12).

To establish that personal jurisdiction over Noom is proper, Plaintiffs must first show that Noom has taken "some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within" Pennsylvania. *Ford Motor Co.,* 141 S. Ct. at 1024 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Id.* at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). In other words, Plaintiffs must show that Noom "deliberately reached out beyond its home" and into the forum state. *Id.* (internal quotations omitted). When it comes to widely accessible commercial websites, the United States Court of Appeals for the Third Circuit has instructed that "the mere operation of a commercially interactive web site should not subject the

operator to jurisdiction anywhere in the world." *Toys "R" Us, Inc.,* 318 F.3d at 454. In other words, Pennsylvania will not have personal jurisdiction over Noom if Noom's connection to Pennsylvania is merely "a derivative benefit of its successful attempt to exploit the United States as a national market." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009). "Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via his web site, or through sufficient other related contacts." *Id.*

Plaintiffs claim that Noom "chose to avail itself of the business opportunities of marketing and selling its services in Pennsylvania and collecting real-time data from website visit sessions initiated by Pennsylvanians while located in Pennsylvania[.]" (ECF No. 15, ¶ 8). *See also* (ECF No. 15, ¶ 10) ("Noom spends millions of dollars on advertising across the country (including Pennsylvania)[,]" which "has resulted in a robust market for its services throughout the United States (including Pennsylvania)."). These allegations, on their own, are not sufficient to show "with reasonable particularity" that Noom directly targeted its website to Pennsylvania or that it knowingly interacted with Pennsylvania residents through its website. Thus, Plaintiffs have not sufficiently established that Noom "purposefully availed" itself to the laws of Pennsylvania.

Nor have Plaintiffs sufficiently established that their claims "arise out of or relate to the defendant's activities[.]" *Danziger,* 948 F.3d at 129 (internal quotations omitted). "Whether a plaintiff's claims 'arise out of or relate to' the defendant's contacts with the forum state depends, in part, on the type of claim brought." *Id.* at 130. For intentional tort claims, courts apply an "effects test," which requires a plaintiff to show (1) that the defendant "expressly aimed" its tortious conduct at the forum, making the forum "the focal point of the tortious activity" (2) and

that the plaintiff felt the "brunt of the harm" in the forum. *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998). Plaintiffs must also "show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum[.]" *Id.* at 266. Noom argues that Plaintiffs have not established "that Noom expressly aimed its conduct at Pennsylvania[]" or "that Noom 'knew' that Plaintiffs 'would suffer the brunt of the harm' in Pennsylvania[.]" (ECF No. 21, pp. 14, 15).

The question of whether Noom "expressly aimed" its conduct at Pennsylvania involves similar issues, arguments, and analysis to the question of whether Noom "purposefully availed" itself to Pennsylvania. Noom again argues that Plaintiffs have failed "to allege that Noom engaged in any Pennsylvania-specific activities." (*Id.* at 15). Plaintiffs argue that "Noom has expressly aimed its tortious conduct at Pennsylvania" by designing a website to attract an audience that included Pennsylvanians and by cultivating its website for commercial gain in Pennsylvania. (ECF No. 24, p. 13). As with the purposeful availment prong, allegations involving Noom's "efforts to exploit a national market [that] necessarily included Pennsylvania as a target" are not sufficient to establish that Noom "expressly aimed" its conduct at Pennsylvania. *D'Jamoos ex rel. Est. of Weingeroff*, 566 F.3d at 104.

Even if Plaintiffs could show "purposeful availment" and that Noom "expressly aimed" its conduct at Pennsylvania, Plaintiffs still must show that Noom knew that the brunt of the harm caused by its allegedly tortious activity would be felt in Pennsylvania. Plaintiffs claim that "Noom intentionally implemented software on its website that it knew would gather Website Communications of Pennsylvania citizens, while they were located in Pennsylvania." (ECF No. 24, p. 12) (citing ECF No. 15, ¶¶ 8, 10). Plaintiffs further allege that "Noom's website servers are capable of collecting user location data from a user's device such that Noom is continuously made

aware that its website is being visited by people located in Pennsylvania, and that such website visitors are being wiretapped in violation Pennsylvania statutory and common law." (ECF No. 15, ¶ 9). According to Plaintiffs, because Noom had geolocation data, "it is inevitable that Noom knew it was procuring the surreptitious capturing of electronic communications of citizens of Pennsylvania." (ECF No. 24, p. 12) (citing ECF No. 15, ¶¶ 8-9, 50).

These allegations are not sufficient to establish "with reasonable particularity" that Noom knew that Plaintiffs would suffer the brunt of the harm in Pennsylvania. Plaintiffs allege that Noom can search recorded website user sessions by location but have not pled a specific instance of Noom doing so. Additionally, Noom rightly points out that "Plaintiff fails to allege that any purported collection of geolocation data is specifically directed at Pennsylvania citizens and, . . . merely knowing that there are Pennsylvania citizens visiting Noom's website does not establish personal jurisdiction." (ECF No. 25, p. 9). More to the point, it does not establish that Noom knew that the brunt of the harm caused by their allegedly tortious activity would be felt in Pennsylvania.

Without further evidence, Plaintiffs cannot establish that specific personal jurisdiction over Noom is proper. When considering a motion to dismiss for lack of personal jurisdiction, however, courts have discretion to allow jurisdictional discovery. *See In re Diisocyanates Antitrust Litig.*, 2020 WL 1140245, at *7 (W.D. Pa. Mar. 9, 2020). The Third Circuit instructs courts "to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc.,* 318 F.3d at 456 (internal citations omitted). If a plaintiff presents factual allegations that suggest "with reasonable particularity" the possible existence of the requisite "contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (internal quotations and citations omitted).

Plaintiffs allege that Noom marketed and sold its services in Pennsylvania and collected the data of Pennsylvania residents who used the website while in the Commonwealth. (ECF No. 15, ¶ 8). Plaintiffs also claim that Noom—through its geolocation data—knew that it was wrongfully capturing electronic communications of Pennsylvania residents. (*Id.* ¶ 9). These non-frivolous allegations suggest, "with reasonable particularity," the possible existence of the requisite "contacts between [Noom] and the forum state[.]" *Toys "R" Us, Inc.*, 318 F.3d at 456.

Because Plaintiffs have made the required threshold showing, the Court will exercise the right to order jurisdictional discovery. "Parties are entitled to a fair opportunity to engage in jurisdictional discovery to obtain facts necessary for thorough consideration of the [jurisdiction] issue." *In re Diisocyanates Antitrust Litig.*, 2020 WL 1140245, at *7 (W.D. Pa. Mar. 9, 2020). Here, thorough consideration of the jurisdiction issue requires additional facts relating to Noom's knowledge of the harm allegedly caused by its tortious conduct and additional facts relating to Noom's business plans, sales, and marketing in Pennsylvania. These facts are necessary to properly consider the question of personal jurisdiction "and can be learned by [Plaintiffs] only through discovery." *Toys "R" Us, Inc.*, 318 F.3d at 455, 457. Thus, Plaintiffs will be permitted jurisdictional discovery on Noom's business plans, sales, and marketing strategies for the Commonwealth of Pennsylvania and on Noom's knowledge of the harm caused by its allegedly tortious conduct in Pennsylvania. The Court will deny Noom's Motion to Dismiss under Rule 12(b)(2) without prejudice for it to be reasserted after the conclusion of jurisdictional discovery.

**B. Noom's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

**1. Count I: WESCA**

At Count I, Plaintiffs bring a claim under WESCA, which Noom moves to dismiss for failure to state a claim. To establish their WESCA claim, Plaintiffs must show that Noom

intercepted an electronic communication. 18 Pa. C.S. § 5703(1). The statute defines "intercept" as an "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." *Id.* § 5702. Noom argues that Plaintiffs have failed to sufficiently plead an "interception" as defined in the statute. (ECF No. 21, p. 9). More specifically, Noom argues that Plaintiffs have not shown that Noom used a "device" or that Noom intercepted any "contents" of Plaintiffs' communications.

**a. "Device"**

According to Noom, "the statute's plain language and longstanding precedent make clear that software code on Noom's website is not a 'device' within the meaning of the statute." (*Id.* at 17). Noom urges the Court to refer to two dictionary definitions of "device"—one legal definition and one non-legal definition—each of which indicate that "device" includes only tangible objects. (*Id.* at 17-18). While dictionary definitions can help ascertain a word's common and approved usage, the Court is ultimately bound by the statutory definition. *See Stivason v. Timberline Post & Beam Structures Co.*, 947 A.2d 1279, 1282 (Pa. Super. 2008) ("If the General Assembly defines words that are used in a statute, those definitions are binding.").

WESCA defines "device" to mean "[a]ny device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic or oral communication[.]" 18 Pa. C.S. § 5702. The term "electronic communication" is defined as "[a]ny transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system[.]" *Id.* The use of the word "any" in both definitions indicates that the class of technology contemplated by WESCA is broad. *See Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 116 (W.D. Pa. 2019).

Plaintiffs allege that Noom's website uses Session Replay Code, "which records all website visitor actions, including information typed by the website users while on the website." (ECF No. 15, ¶ 47). According to the Amended Complaint, the Session Replay Code also records every interaction made by a website user, including "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, network requests, and more." (*Id.* ¶ 48). These allegations—accepted as true and viewed in the light most favorable to the Plaintiffs—are sufficient to establish that the Session Replay Code on Noom's website falls within WESCA's broad definition of "device." As pled, the Session Replay Code used by Noom could reasonably be considered "a device or apparatus" that can be used to intercept a transfer of data. The Court is not persuaded by Noom's argument that Session Replay Code cannot be a "device" because it cannot intercept communications on its own—that is, without being connected to a computer. For a device to intercept an electronic communication, it usually must be embedded within (or connected to) the device on which the underlying communication is taking place. Although Plaintiffs have pled enough at this stage, they will still bear the ultimate burden of showing that the Session Replay Code, as used by Noom, is a "device" under WESCA. Discovery will give parties the opportunity to develop a factual record around how Noom's website deployed its Session Replay Code and how the Session Replay Code interacted with each website user's browser and computer.

**b. "Contents"**

Noom also moves to dismiss Plaintiffs' WESCA claim because, according to Noom, they failed to allege that any "contents" (as defined in the statute) were intercepted. *See* (ECF No. 21, p. 21). The statute defines "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 Pa. C.S. § 5702. The issue, then, is whether Plaintiffs have

sufficiently pled that the information they claim Noom intercepted was part of the substantive information being conveyed to Noom.

Oliver claims that Noom, through the Session Replay Code on its website, collected personal information she input as part of Noom's 10-minute online quiz, including her height, weight, gender, age, reason for wanting to lose weight, how active she is, how often she eats, and whether she is at risk for specific health issues. (ECF No. 15, ¶¶ 44, 58, 59). This information relates to Oliver's health and weight loss goals, which is clearly part of the substantive information she was conveying to Noom. Noom argues that these allegations are too vague, and that Plaintiffs have failed to point to any specific information that Noom intercepted. (ECF No. 25, p. 14). The Court disagrees. Plaintiffs allege that Noom's Session Replay Code "records all website visitor actions[,]" which necessarily includes all of the information input when taking Noom's quiz. (ECF No. 15, ¶ 47). At this stage, these allegations are sufficient to establish that Noom intercepted "contents" of Plaintiffs' communications. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015) ("Because the complaint pleads a broad scheme in which the defendants generally acquired and tracked the plaintiffs' internet usage, we are satisfied that this scheme, if it operated as alleged, involved the collection of at least some 'content' within the meaning of the Wiretap Act."). The Court is also not persuaded by Noom's argument that Plaintiffs failed "to allege the Session Replay Code collects information in a way that links specific answers to Noom's specific visitors." (ECF No. 25, p. 14). The recorded information, according to the Amended Complaint, is stored on FullStory servers, "can be linked directly to a website user's identity[,]" and "can be translated into a simulation video of how a user interacts with a website." (ECF No. 15, ¶¶ 47, 48, 49).

In addition to personal information input as part of Noom's quiz, Plaintiffs also claim that Noom intercepted users' "names, emails, phone numbers, addresses, social security numbers, date[s] of birth, and more[.]" (*Id.* ¶ 47). The Third Circuit has held that such information can be "content" if it is "part of the substantive information conveyed to the recipient[.]" *In re Google Inc.,* 806 F.3d at 137. This inquiry, however, is "a case-specific one" that will largely depend on surrounding facts and context. *Id.* Thus, determining whether such information is "content" in this context will require a more developed factual record.

**c. Consent**

Independent of its other arguments, Noom argues that Plaintiffs' WESCA claim should be dismissed because they consented to the challenged activity. (ECF No. 21, p. 9). WESCA contains a consent exception, whereby a person may "intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception." 18 Pa. C.S. § 5704. *See also Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022) ("[I]f someone consents to the interception of her communications with a website, the WESCA does not impose liability."). "Prior consent" can be shown by demonstrating that "the person being recorded 'knew or should have known, that the conversation was being recorded.'" *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020) (quoting *Commonwealth v. Diego*, 119 A.3d 370, 377 (Pa. Super. 2015)). "This standard is one of a reasonable person, and not proof of the subjective knowledge of the person being recorded[.]" *Id.*

Noom argues that Oliver consented to the challenged activity by "expressly agree[ing] to Noom's Privacy Policy and Terms when she signed up for her trial membership." (ECF No. 21, p. 24). Plaintiffs do not dispute that they were presented with Noom's Terms of Service and Privacy Policy when they signed up for Noom's free trial service. (ECF No. 24, p. 20). Rather,

their claim is that "the wiretapping begins the moment a website user visits www.noom.com and Noom does not ask website visitors to agree to the Privacy Policy and Terms of Use until after they have already been wiretapped[.]" (ECF No. 15, ¶ 73). Thus, according to Plaintiffs, they "had no opportunity to review the Privacy Policy before they were wiretapped[.]" (*Id.*). These allegations are sufficient to establish, at this stage, that Plaintiffs did not receive notice of (or consent to) Noom's policies until after the alleged wiretapping took place.

Noom next argues that, even if Plaintiffs did not expressly agree to Noom's policies before the alleged tortious activity, they "should have known that [their] interactions with Noom's website could be collected and analyzed." (ECF No. 21, p. 23). In other words, Noom argues that a reasonable person using Noom's website would have known that, "by 'the very act of sending a communication over the Internet,' . . . she was 'expressly consent[ing] to the recording' of her [w]ebsite communications." (*Id.*) (quoting *Commonwealth v. Proetto*, 771 A.2d 823, 829 (Pa. Super. 2001), aff'd, 837 A.2d 1163 (Pa. 2003)). Indeed, a reasonable person's knowledge that she is being recorded may be "surmised from the very nature of the selected means of transmission[.]" *Diego*, 119 A.3d at 376. In the context of the internet, the Third Circuit has acknowledged that "[m]ost of us understand that what we do on the Internet is not completely private," and "recognize, even if only intuitively, that our data … feed[s] an entire system of trackers, cookies, and algorithms designed to capture and monetize the information we generate." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016).

Noom cites *Proetto*, where the Superior Court of Pennsylvania held that "by the act of forwarding an e-mail or communication via the Internet, the sender expressly consents . . . to the recording of the message." *Proetto*, 771 A.2d at 830. The *Proetto* court likened sending an email or chat-room message to leaving a message on an answering machine, where "[t]he sender knows

that by the nature of sending the communication a record of the communication, including the substance of the communication, is made and can be downloaded, printed, saved, or, in some cases, if not deleted by the receiver, will remain on the receiver's system." *Id.* Here, however, Oliver did not send an email or message to Noom; she visited Noom's website and submitted an online quiz. Unlike sending an email, chat room message, or leaving a message on an answering machine, visiting a website and taking an online quiz does not, by its very nature, involve a record of the communication. Noom argues that, because Oliver entered her email address into Noom's website to receive the results of her quiz, she "should have known that her quiz results first must be recorded before a copy can be sent to her by email." (ECF No. 25, p. 17) (internal quotations omitted). While potentially true, it is not clear when—in relation to the alleged wiretapping—Oliver first entered her email address or whether she entered her email address for the purpose of receiving her quiz results.

Noom next argues that—by visiting Noom's website, continuing to browse the website, and signing up for a trial membership—Plaintiffs "consented by conduct to Noom's collection of her online communications with the Noom Website." (ECF No. 21, p. 24) (internal citations and quotations omitted). Noom cites to *Byrd*, where the Pennsylvania Supreme Court held that a prisoner consented by conduct to being recorded when he spoke to a visitor by telephone after receiving a warning message that the call may be recorded. *Byrd*, 235 A.3d at 320. Noom argues that, like the warning message in *Byrd*, the link to Noom's Privacy Policy on its website "put [Oliver] on notice that her interactions with the Website may be monitored or recorded." (ECF No. 21, p. 24). However, unlike in *Byrd*, Oliver did not receive a direct, unprompted warning about the collection of her activity when she first accessed Noom's website.

A message warning that an upcoming phone call could be recorded is similar, in the online context, to so-called "clickwrap" agreements, "where users must click on an acceptance after being presented with terms and conditions" before accessing a website. *James v. Glob. TelLink Corp*, 852 F.3d 262, 267 (3d Cir. 2017). Noom's website, however, contained a "browsewrap" agreement, which "do not require users to expressly manifest assent[]" before accessing a website. *Id.* "[W]hether the terms and conditions in browsewrap agreements are enforceable, often turn[s] on whether the terms or a hyperlink to the terms are reasonably conspicuous on the webpage[]" such that a reasonably prudent user would have actual or constructive notice of the relevant conditions. *Id. See also McDaid v. Avant, LLC*, No. 2:21-CV-01135-RJC, 2021 WL 9803613, at *1 (W.D. Pa. Oct. 26, 2021) ("In a browsewrap situation, adequate notice would depend on how conspicuous the terms were on the linked website.").

Noom argues that Plaintiffs were put on notice that their interactions with Noom's website may be recorded because the bottom of the webpage contained a "link to Noom's Privacy Policy[,] [which] was underlined and conspicuously available[.]" (ECF No. 21, p. 24). According to the Amended Complaint, however, the link to Noom's Privacy Policy and Terms of Use is "buried at the very bottom of the website in tiny, non-contrasting font that is unobtrusive and easy to overlook." (ECF No. 15, ¶ 74). This allegation, accepted as true, is sufficient to establish that "a reasonable person could browse Noom's website without ever being on notice of its purported Privacy Policy and Terms of Use." (*Id.*).

At this stage, Noom has not shown that Plaintiffs "knew or should have known" that their activity on Noom's website was being recorded prior to allegedly being wiretapped. A more developed factual record is needed to determine whether Plaintiffs consented to the challenged activity. Specifically, more facts are needed regarding when Plaintiffs were presented with

Noom's Terms of Service and Privacy Policy in relation to Noom's alleged tortious conduct; when Plaintiffs entered their email addresses on Noom's website; and whether it was clear from Noom's website how those email addresses would be used. Discovery may also provide necessary details regarding the presentation of the browsewrap agreement on Noom's website.

**2. Count II: Intrusion Upon Seclusion**

At Count II, Plaintiffs bring a common law claim for intrusion upon seclusion. Pennsylvania courts have adopted the Second Restatement of Torts' ("Restatement") definition of intrusion upon seclusion. *See Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 260 (3d Cir. 2004). Under the Restatement, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (1977). Noom moves to dismiss Plaintiffs' intrusion upon seclusion claim, arguing that Plaintiffs have failed to plead a cognizable claim that (1) Noom intentionally intruded upon Plaintiffs' solitude or seclusion, (2) that Plaintiffs had a reasonable expectation of privacy over their actions on Noom's website, or (3) that Noom's alleged conduct would be highly offensive to a reasonable person. *See* (ECF No. 21, pp. 25-28).

"[A]n actor commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989). Noom argues that its "Privacy Policy, to which Plaintiff[s] agreed, plainly discloses the purportedly unlawful conduct." (ECF No. 21, p. 26). This, according to Noom, "establishes that Noom lacked the requisite intent regarding the legal permission to commit the alleged data collection." (*Id.*). Courts "have appropriately treated the presence or absence of consent as a key factor in" determining whether an alleged intrusion

occurred without "legal or personal permission." *In re Nickelodeon,* 827 F.3d at 293. As discussed above, a more developed factual record is needed to resolve the issue of consent. At this stage, Plaintiffs have pled sufficient facts to support a reasonable inference that Noom believed that it lacked the necessary permission to record users' activity prior to presenting them with the Privacy Policy and Terms of Use.

As for the second element, Plaintiffs claim that they "have an objective, reasonable expectation of privacy" in their communications with Noom's website. (ECF No. 15, ¶ 107). The Amended Complaint includes citations to several surveys intending to show that "those privacy expectations are shared by the public at large." (ECF No. 24, p. 24) (citing ECF No. 15, ¶¶ 17-22, 107). Noom argues that Plaintiffs cannot establish that they had a reasonable expectation of privacy while on Noom's website because Noom's Privacy Policy "forewarned Plaintiff[s] that [their] actions on the site were subject to monitoring by Noom and its third-party partners." (ECF No. 21, p. 26). As discussed previously, however, Plaintiffs have sufficiently alleged that Noom's unlawful wiretapping occurred prior to users being presented with Noom's policies. *See* (ECF No. 15, ¶ 73).

Noom also argues that Plaintiffs cannot claim to have a legitimate expectation of privacy over information that they voluntarily provided to Noom. (ECF No. 21, p. 26). Indeed, "a person 'has no legitimate expectation of privacy in information he voluntarily turns over to third parties.'" *United States v. Bowers*, No. 2:18-CR-00292-DWA, 2021 WL 2882438, at *3 (W.D. Pa. July 8, 2021) (quoting *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979)). Thus, Plaintiffs cannot bring a claim for intrusion upon seclusion as it relates to information voluntarily provided to Noom. This includes information provided as part of Noom's introductory quiz, where Oliver claims to have answered questions "relating to her weight loss goals, her gender, age, height, weight, lifestyle,

marital status, [and] health conditions[.]" (ECF No. 15, ¶ 58). Noom's motion to dismiss Plaintiffs' intrusion upon seclusion claim will be granted as it relates to any information that was voluntarily provided to Noom.

Lastly, Noom argues that Plaintiffs have failed to establish that Noom's alleged conduct "would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (1977). For an invasion to be sufficiently offensive to give rise to a claim for intrusion upon seclusion, the invasion must be "of the sort which would cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Chicarella v. Passant*, 494 A.2d 1109, 1114 (Pa. Super. 1985). Having held that Plaintiffs failed to establish that they had a reasonable expectation of privacy over information they voluntary provided to Noom, the Court need only address the final element as it relates to information that was not voluntarily provided by Plaintiffs. This includes Plaintiffs' IP addresses, geolocation data, "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, network requests, and more." (ECF No. 15, ¶ 48). While having one's keystrokes and mouse movements recorded may be an invasion of a website user's privacy, it "is simply not the type of highly offensive act to which liability can attach." *Popa,* 426 F. Supp. 3d at 122. An invasion of this kind would not "cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Chicarella,* 494 A.2d at 1114. Thus, Noom's motion to dismiss Plaintiffs' claim for intrusion upon seclusion will be dismissed as it relates to information that was not voluntarily provided by Plaintiffs.

## IV. CONCLUSION

For the reasons set forth above, Noom's Motion to Dismiss the First Amended Complaint (ECF No. 20) will be granted in part and denied in part. The motion to dismiss for lack of personal

jurisdiction (ECF No. 20) will be denied without prejudice. The Court will order jurisdictional discovery to proceed alongside substantive discovery. Upon the completion of discovery, Noom may reassert its motion to dismiss for lack of personal jurisdiction alongside any motions for summary judgment.

The motion to dismiss for failure to state a claim (ECF No. 20) will be denied as it relates to Plaintiffs' WESCA claim (Count I) and will be granted as it relates to Plaintiffs' common law claim for intrusion upon seclusion (Count II). An Order of Court will follow.

BY THE COURT:

William S. Stickman IV

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

8/22/2023
Dated